## In re Nehemiah Associates, Inc.

[719 A.2d 34]

No. 97-223

Present: **Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 11, 1998

*James P. W. Goss* of *Reiber, Kenlan, Schwiebert, Hall & Facey, P.C.*, Rutland, for Appellant.

*William H. Sorrell*, Attorney General, and *John H. Hasen* and *Rebecca M. Ellis*, Assistant Attorneys General, Montpelier, for Amicus Curiae State.

*Robert E. Woolmington* and *Elizabeth A. Boepple* of *Witten, Woolmington, Bongartz & Campbell, P.C.*, Bennington, for Amicus Curiae Perkins.

**Skoglund, J.** Nehemiah Associates, Inc. appeals from a decision of the Environmental Board denying Nehemiah's application for an Act 250 permit amendment to subdivide and develop a 3.38-acre lot into three residential building lots. Nehemiah previously appealed the Board's decision denying its application, and we reversed and remanded for the Board to balance the policy considerations raised by the parties. See *In re Nehemiah Assocs.*, 166 Vt. 593, 595, 689 A.2d 424, 426 (1996) (mem.) (*"Nehemiah I"*). Nehemiah contends that on remand the Board: (1) erred because our holding in *Nehemiah I* mandated approval of the permit amendment; (2) applied an improper test and relied upon inappropriate factors to determine whether to grant Nehemiah's application; and (3) abused its discretion by basing its denial of Nehemiah's application on findings and conclusions it altered or added to its preremand decision without holding another evidentiary hearing. In addition, Nehemiah claims that, even if the Board used the correct balancing test and considered the proper factors, Nehemiah satisfied the standard. We affirm.

For purposes of this appeal, we must again set forth a brief history. In 1989, Nehemiah purchased twelve acres of land on Route 3 in Pittsford for the purpose of developing the land into a residential

subdivision. At the time of the purchase, the property was surrounded primarily by agricultural and limited-usage lands. Nehemiah applied for and received an Act 250 permit authorizing it to subdivide the land into eleven lots: ten residential lots, each less than one acre, and a single 3.38-acre lot along Route 3 that would be left undeveloped to satisfy the requirements of 10 V.S.A. § 6086(a)(9)(B) (criterion 9B). Criterion 9B is designed to preserve the agricultural potential of prime agricultural soils. To satisfy this criterion, Nehemiah drafted, at the commission's request, a proposed right-to-farm covenant to permit continued agricultural and related farming activities on the 3.38-acre lot.

The district commission found that such use of this parcel would also provide a visual buffer, thereby satisfying the aesthetic considerations of §[EW1] 6086(a)(8) (criterion 8). Relying on the right-to-farm covenant, the commission further found that the proposed development complied with criterion 9B. The commission then incorporated Nehemiah's proposed right-to-farm covenant into condition 9 of the Act 250 permit, which it granted to Nehemiah on December 27, 1989. Condition 9 of the permit required Nehemiah to insert the covenant regarding the reserve land in all subdivision deeds in order to put buyers on notice of the planned agricultural use of the 3.38 acres and to inform them that they waived their right to sue a farmer for agricultural nuisance. In addition to the agreed-upon covenant language, the commission sua sponte included the following language at the end of condition 9: "Furthermore, the permittee or subsequent landowners association shall maintain the 3.38-acre agricultural reserve lands as open, cleared, uncluttered, and unencumbered land."

Nehemiah divided and sold nine lots in the subdivision, leaving the reserve land undeveloped. The nine deeds each included the right-to-farm covenant of condition 9, but intentionally omitted the open-land paragraph set forth above. When selling the lots, Nehemiah informed all buyers that the reserve land would remain undeveloped because of criterion 9's primary agricultural soils restriction. Nehemiah, however, regarded future development of the reserve land as a reserved right apparent to any person, including the purchasers, who examined the 1989 permit application.

After the commission granted Nehemiah's permit, the Vermont Department of Agriculture instituted an off-site agricultural soils

mitigation program (agsoils program).[1] In 1992, citing the availability of the agsoils program, Nehemiah filed an application to amend its land-use permit, requesting permission to subdivide the reserve land into three residential lots. At the hearing, the commission found that participation in the agsoils program would put the development of the reserve land into compliance with criterion 9B. Nevertheless, the commission denied the permit amendment because it found that the development of the reserve land would not conform with the aesthetic considerations of criterion 8. Nehemiah appealed to the Environmental Board.

After the Environmental Board held a hearing on the matter, it issued a decision in which it concluded that all the elements of collateral estoppel were met with respect to condition 9. Nonetheless, to avoid applying the doctrine rigidly in an administrative proceeding, the Board engaged in its regular policy analysis, weighing considerations of flexibility against finality. It concluded that, because of Nehemiah's failure to include the open-land paragraph in the deeds, the policy of finality outweighed the policy of flexibility. The Board therefore denied Nehemiah's requested amendment without reaching condition 8. Nehemiah appealed the Board's decision to this Court.

In *Nehemiah I*, we concluded that Nehemiah had reasonably construed condition 9 with respect to the open-land paragraph, holding therefore that the Board had erred in concluding it was a required deed covenant. See 166 Vt. at 594, 689 A.2d at 425. We further concluded that, while an analysis of finality and flexibility could provide sufficient grounds to deny a permit amendment, the Board erred in relying on collateral estoppel because the doctrine's elements do not constitute appropriate standards with which to evaluate a permit amendment application. *Nehemiah I*, 166 Vt. at 594, 689 A.2d at 425 (reiterating recent holding from *In re Stowe Club Highlands*, 166 Vt. 33, 687 A.2d 102 (1996)). We therefore reversed and remanded the Board's decision "for the Board to balance the policy considerations raised by the parties to determine whether to grant the permit amendment." *Nehemiah I*, 166 Vt. at 595, 689 A.2d at 426.

On remand, the Board again balanced the competing policies of flexibility and finality in relation to condition 9. The second time,

---

[1] Under this program, an Act 250 applicant can pay a fee to the Department of Agriculture to mitigate the loss of agricultural lands resulting from a subdivision or other development project. These fees are then used to preserve agricultural lands in other parts of Vermont.

however, it considered the open-land paragraph as a substantive condition of the permit rather than as a required deed covenant. It again concluded that the policy of finality outweighed the policy of flexibility and denied Nehemiah's application for a permit amendment. This appeal followed.

■ We accord deference to the Environmental Board's interpretations of Act 250, its own rules, and to the Board's specialized knowledge in the environmental field. See *In re Wal\*Mart Stores, Inc.*, 167 Vt. 75, 79, 702 A.2d 397, 400 (1997). Absent compelling indications of error, we will sustain the Board's interpretation on appeal. See *id.* Further, the Board's decisions are presumed to be correct, valid, and reasonable. See *In re Denio*, 158 Vt. 230, 239, 608 A.2d 1166, 1171 (1992).

## I.

Nehemiah contends that on remand the Board erred in not automatically granting its application based on our holding in *Nehemiah I* and the Board's preremand findings. Nehemiah argues as follows. First, the Board concluded in its preremand decision that, until such time as Nehemiah fully complied with condition 9 of the 1989 permit by inserting the open-land paragraph into the individual deeds, the policy of finality outweighed the policy of flexibility. Second, this Court concluded that the open-land paragraph was not a covenant and, therefore, that Nehemiah was not required to insert it into the individual deeds. Third, we reversed the Board's preremand decision because it was based solely on the erroneous conclusion that condition 9 required inclusion of the open-land paragraph in the deeds. Finally, Nehemiah alleges that, since condition 9, "the sole impediment to issuing the Amendment," was no longer at issue, the Board should have issued the permit on remand because at that point the policy of flexibility outweighed the policy of finality.

This argument, however, overlooks one very important detail. Although we held in *Nehemiah I* that the open-land paragraph was not a covenant, we recognized that the open-land paragraph was still a permit condition. See 166 Vt. at 594, 689 A.2d at 425 (stating open-lands paragraph is condition of original permit to which Nehemiah seeks amendment). The Board in its preremand decision analyzed the open-land paragraph as a required, but missing, covenant, but failed to balance the policies of flexibility and finality with respect to the open-land paragraph as a condition of the 1989 permit.

In fact, the Board expressly noted that, because it based its decision on the doctrine of collateral estoppel, it did not reach the issue of whether the project complied with criterion 8.

■ On remand, we required the Board to balance policy considerations that were raised by the parties in determining whether to amend the condition 9, which included the open-land paragraph. This is exactly what the Board did; consequently, there is no error.[2]

## II.

Nehemiah next alleges several errors in regard to the test used by the Board and the factors it considered in determining whether to grant Nehemiah's application. First, Nehemiah contends that the Board erred by not applying the ten criteria of Act 250 in determining whether to grant a permit amendment. See 10 V.S.A. § 6086(a). Second, Nehemiah contends that, even if the ten criteria of § 6086(a) are not applicable to an application to amend a permit, the policy considerations of flexibility and finality were improperly weighed by the Board because the use of the doctrine of collateral estoppel was rejected in *Nehemiah I*. Finally, Nehemiah alleges that, even if the policy concerns of finality and flexibility were properly considered by the Board on remand, the Board improperly considered the commission and property owners' reliance interests because the weighing of reliance interests is beyond the scope of powers granted to the Board and the Board is not equipped to handle such a concern. We disagree.

If a development or subdivision falls within Act 250, a permit will be granted only if it conforms to the ten criteria of § 6086(a). Neither Act 250 nor the Board's rules, however, provide a standard for dealing with amendments to previously granted permits. Under Board rules, amendments are warranted in certain circumstances. See Environmental Board Rule 34 ("An amendment shall be required for any material or substantial change in a permitted project."). The primary question in amendment cases "is not whether to give effect to the original permit conditions, but under what circumstances those permit conditions may be modified." *Stowe Club Highlands*, 166 Vt. at 37, 687 A.2d at 105.

---

[2] Further, we note that, if Nehemiah's contention were true, we would not have had a reason to remand the case back to the Board. Instead, if our ruling constituted an automatic grant of Nehemiah's application, we would have reversed the Board's decision and, on our own accord, have granted Nehemiah's application to amend its 1989 permit.

Conditions set forth in a permit allow the permittee to proceed with the subdivision or development while maintaining compliance with Act 250. After the permit is granted and circumstances change, existing permit conditions may no longer be a cost-effective or efficient method to minimize the development or subdivision's impact. The permitting process should therefore be flexible enough to address changes in circumstance. To assist in assessing the competing policies of flexibility and finality in the permitting process, the Board has identified three kinds of changes that would justify an amendment to a permit condition: (a) changes in factual or regulatory circumstances beyond the control of a permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology. *Stowe Club Highlands*, 166 Vt. at 38, 687 A.2d at 105. On remand in this case, the Board again considered these kinds of changes in evaluating Nehemiah's requested permit amendment.

Even where the Board finds such a change, there are certain situations where an amendment may not be justified, for instance where the change was reasonably foreseeable at the time of permit application. "Otherwise, the initial permitting process would be merely a prologue to continued applications for permit amendments." *Id.* at 39, 687 A.2d at 106. The permitting process requires some finality because, both at the time the permit issues and subsequently, the parties and other interested persons reasonably rely on the permit conditions in making decisions. District commissions as well may reasonably expect to rely on permit conditions as a factor in evaluating further development in the area of the permitted project. Thus, the Board has appropriately established a balancing test of flexibility and finality in the permitting process.

As we suggested in *Stowe Club Highlands*, it is desirable that the Board further develop a set of standards, either through rulemaking or through individual decisions, to create a consistent approach to permit amendment requests. See 166 Vt. at 37, 687 A.2d at 105. It is for the Board, in the first instance, to decide what standards will guide its evaluation of permit amendment requests and what role the ten criteria of Act 250 shall have in such evaluations. The Board has used flexibility and finality as policy considerations separate and apart from the doctrine of collateral estoppel. We hold that, in this case, as in *Stowe Club Highlands*, the Board appropriately weighed the interests of finality and flexibility in the permitting process.

█ In its decision on remand, the Board appraised the parties' and district commission's interests in finality and concluded that three landowners "all reasonably relied on the substantive requirement of condition # 9 of the 1989 permit that 'the permittee or subsequent landowners association shall maintain the 3.38-acre agricultural reserve lands as open, cleared, uncluttered, and unencumbered land' as a condition required under Criterion 8." The Board also concluded that the district commission relied on condition 9 when it issued the 1989 permit. These conclusions are supported by the Board's findings.

Nehemiah argues that the Board lacks authority and competency to weigh competing reliance interests of parties because nowhere in 10 V.S.A. chapter 151 is there any authorization for the Board to weigh the contractual reliance interests of parties to a real estate purchase and sale agreement in connection with an amendment proceeding. The Board did not do this. Nehemiah's attempt to cast the Board's decision as the equivalent of a decision on a civil action for rescission cannot obscure the basic concern that was before the Board: whether allowing the permit amendment is appropriate under the circumstances. See *Stowe Club Highlands*, 166 Vt. at 40, 687 A.2d at 106 ("This hypertechnical argument obscures the basic concern: whether allowing the permit amendment is appropriate under the circumstances.").

### III.

Nehemiah alleges that the Board erred by altering or adding to its preremand findings and conclusions on remand without giving the parties an opportunity to present evidence or testimony. We disagree. The additional findings and new conclusions on remand were supported by the evidence and testimony presented by the parties during the preremand hearing. Nehemiah had a fair opportunity to develop its case and rebut the other parties' case. All the Board did was supplement its findings and conclusions with evidence that was fairly before it. We find no error.

Nehemiah further contends that the Board abused its discretion by unjustly reversing its preremand conclusions on remand. As noted above, on remand the Board accepted the Court's direction to reevaluate Nehemiah's request for a permit amendment through an analysis of the policy considerations of flexibility and finality. This required that the Board alter its preremand findings and conclusions since it had not previously addressed the two policy considerations in relation to the open-land paragraph as a substantive condition of the permit.

With respect to flexibility, the Board evaluated whether the types of change identified in *Stowe Club Highlands* as warranting a permit amendment were present in this case, i.e., whether there were changes in factual or regulatory circumstances, in the construction or operation of the project, or in technology. See *id.* at 37, 687 A.2d at 105. In its preremand decision, the Board had concluded that the factual circumstances under criterion 8 had changed because residential construction and subdivision activity had occurred in the area surrounding the 1989 project since the district commission had issued the permit.[3] On remand, the Board again concluded factual circumstances beyond Nehemiah's control had changed, namely the development of land surrounding Nehemiah's project. The Board further noted, however, that this change had occurred on land Nehemiah did not own and that such development is hardly unusual. In neither the preremand nor remand decision did the Board find a change in the regulatory circumstances sufficient to have an impact on its analysis under criterion 8. While the Board found that the agsoils program comprised a change in the regulatory circumstances which was beyond Nehemiah's control in 1989, it also found, and we agree, that Nehemiah's "participation in the agricultural soils mitigation program has no bearing on the requirement that the 3.38 acres be kept as open, cleared, uncluttered, and unencumbered land as a condition under Criterion 8."

In its preremand decision, the Board did not make any findings or reach any conclusions concerning changes in construction or operation of Nehemiah's project. By contrast, on remand the Board concluded that, when Nehemiah applied for the 1989 permit, it contemplated the possible development of the 3.38-acre parcel at some future time. The Board based this conclusion on the finding in the remand decision that Nehemiah asserted a reserved right with regard to possible future development of the reserve land, and that this reserved right would be disclosed to any person who examined the 1989 permit. While such a finding was not included in the preremand decision, the finding was based on Nehemiah's numerous admissions during the amendment process and the original permit application. Moreover, this finding does not contradict the preremand

---

[3] This conclusion was based on the findings that since 1989: (1) "[t]he area surrounding the 3.38 acres is characterized by residential development of comparable density and type to that proposed in the Project"; and (2) "[t]he Pittsford Town Plan identifies the area within which the Project is located as a location for residential growth in Pittsford [and] . . . that approved uses in this area include high density residential uses."

finding that "the Agricultural Soils Mitigation Program did not exist at the time Appellant applied for and obtained the 1989 permit."

In its preremand decision, the Board likewise made no findings or conclusions regarding changes in technology. On remand, however, the Board found and concluded that no relevant evidence existed in the record of a change in technology with regard to the 1989 permit.

In the preremand decision, the Board had concluded that the parties involved in the original permitting process and the commission relied on the permit's conditions. The Board drew no conclusions, however, concerning the reliance interests of the purchasers of the various subdivision lots. On remand, the Board again concluded that the commission relied on the original permit conditions in rendering its decisions. In addition, the Board concluded that the purchasers of the subdivision lots reasonably relied on the open-land paragraph in making decisions to purchase their lots. This conclusion was based on findings that were not included in the preremand decision. Nonetheless, the remand conclusion and the findings that support it were derived from evidence and testimony presented at the original hearing before the Board, in which Nehemiah had a fair and ample opportunity to present its own case and rebut any opposing evidence and testimony.

■ We conclude that there was no abuse of discretion by the Board on remand when it refined its preremand findings and conclusions and added new findings and conclusions. The altered or additional findings and conclusions were all based on evidence and testimony in the preremand record, which Nehemiah had ample opportunity to litigate fully.

## IV.

■ Finally, Nehemiah contends that, even if the Board applied the proper test, weighed the correct factors, and did not abuse its discretion in altering or adding to its preremand findings, the Board erred in denying its application for a permit amendment because there was sufficient evidence presented for the Board to grant Nehemiah's application. "Determining the degree of adverse aesthetic effect is a matter of weighing of the evidence, a role for the Board rather than for this Court." *Denio*, 158 Vt. at 239, 608 A.2d at 1171. Since the Board's findings and conclusions are supported by the evidence, we will not disturb the Board's determination on remand. See 10 V.S.A. § 6089(c) ("The findings of the board with respect to

questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive.").

*Affirmed.*