**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| In re Appeal of Hildebrand | } | Docket No. 228-12-04Vtec |
| | } | |
| | } | |

### Decision and Order on Appellants' Motion for Summary Judgment

Appellant-Applicants Joan Hildebrand and James Hildebrand appeal from a decision of the Town of Waitsfield (Town) Planning Commission (Planning Commission), denying Appellant-Applicants' application for a two-lot subdivision of their 15.9-acre parcel located at 2077 East Warren Road. Appellant-Applicants are represented by Paul S. Gillies, Esq.; the Town is represented by Joseph S. McLean, Esq. Appellant-Applicants have filed a motion for summary judgment and the Town has filed an opposition thereto. No other interested person has appeared in this proceeding.

Appellant-Applicants' statement of questions and motion for summary judgment summarizes the issues presented as follows:

(a) Whether conditions prohibiting further subdivision and requiring preservation and maintenance of open agricultural fields, imposed as part of the original 1992 subdivision approval that created Appellant-Applicants' parcel, may be amended; and

(b) Whether, if the conditions are amended, Appellant-Applicants' property may be subdivided.

### Factual Background

1. Appellant-Applicants Joan Hildebrand and her son James own a 15.9± acre parcel of land,[1] known as Lot 4, which is located on the easterly side of East Warren Road. Lot 4 was one of four lots created in 1992 from the subdivision of the 183.5± acre parcel known as the Neill Farm in the Town's Agricultural-Residential District. Lot 4 is currently improved with Joan Hildebrand's single family residence.

2. On April 30, 2004, Appellant-Applicants submitted a subdivision application (Application #04-09) to the Town Planning Commission to further subdivide Lot 4 into two

---

[1] The Appellant-Applicants' land is sometimes referred to as a 15.3± acre parcel, which is represented as the acreage outside of the right-of-way for the adjoining Town highway.

parcels: a 10± acre parcel with the existing residence (the 10-acre parcel), and a new 5.9± acre parcel (the 5.9-acre parcel) of currently undeveloped land to the south of the 10-acre parcel. Appellant-Applicant James Hildebrand intends to construct a single-family residence on the southerly 5.9-acre parcel and install a driveway as access from an existing curb cut on East Warren Road.

3.   As part of the Town's original approval of the 1992 Neill Farm subdivision, the Town imposed a number of conditions on the subdivision of Lots 1, 2 and 4, including a provision prohibiting "further subdivision" and requiring that "the agricultural fields remaining on lot 4 shall be maintained as open fields, either through grazing, cultivation or mowing on an annual basis, by the owner."  When Lot 4 was sold by the 1992 subdivision applicants, a similar covenant preserving the meadowland was incorporated into the deed.  When Appellant-Applicants purchased Lot 4 in 1995, their warranty deed contained a recitation of the covenant preserving the meadowland.

4.   During the original approval of the Neill Farm subdivision in 1992, the Town Planning Commission expressed concern about the placement of the then proposed house and driveway on Lot 4 because the lot is located in a scenic corridor.  Members of the Planning Commission at that time expressed concerns that further development within the subdivision might disrupt an important viewshed.  Also, the Neill Farm subdivision, particularly Lot 4, is in close proximity to large tracts of land protected from further development by various conservation or agricultural easements.  A majority of Town voters apparently agreed on the importance of protecting this area from further development, as they approved the expenditure of up to $20,000.00 during their 1991 Town Meeting to help preserve the adjoining land from development.

5.   The Town's Notice of Decision approving the Neill Farm subdivision on March 4, 1992, stated "[t]he 32.2 acre parcel [referring to the combination of Lots 1, 2, and 4 of the subdivision on the east side of East Warren Road] is located in an extremely sensitive area of the Town, adjacent to or within site [sic] of 3-4 protected properties, and along a well traveled scenic road.  Among the nearby properties is the Maple Avenue Farm, which the Town has pledged $20,000 to assist with the purchase of development rights."

6.  During the Town Planning Commission's meetings on the present subdivision application, Appellant-Applicants presented three letters from the original subdivision

applicants, Norm Neill, Donald Neill, and Dorothy Lawliss, now neighboring property owners and original Grantors of Appellant-Applicants' parcel, saying that they have "no concerns with the withdrawl [sic] of the restrictive meadowland covenant to allow subdivision of lot #4 for the purposes of building a single family dwelling." See Attach. 2 to Appellant-Applicants' Mot. for Summ. J., at 3–5.

7. Appellant-Applicants' Warranty Deed, dated May 1, 1995, contains a covenant preserving the meadowland on Lot 4 for agricultural use.[2] This deed language was specifically reviewed and approved by the Planning Commission prior to its 1992 approval of the Neill Farm subdivision.

8. After three public hearings on Appellant-Applicants' proposed subdivision and a site visit, the Planning Commission voted unanimously to deny Appellant-Applicants' application on November 3, 2004, and subsequently issued a Notice of Decision and a separate "denial notice" on November 17, 2004.

### Discussion

The resolution of Appellant-Applicants' appeal raises an issue that is fundamental to the ability of the State and its municipalities to limit future development: whether to allow the successive subdivision of a parcel whose original subdivision approval already restricts future partitioning and requires the preservation and maintenance of that parcel's open fields for agricultural use.

At the outset, we note that the Waitsfield Subdivision Regulations (Regulations) expressly authorize the amendment of previously issued subdivision permits, as long as the applicant's final plat is resubmitted to the Planning Commission with the proposed modifications. Regulations Art. V, § 4.0.

Appellant-Applicants' subdivision amendment application appears to satisfy many of the requirements for a two-lot subdivision of Lot 4. Appellant-Applicants' proposed subdivision amendment may properly be considered as a minor subdivision application because it creates only two lots. Subdivision Regulations Art. VII (definition of "minor subdivision"). Appellant-

---

[2] The full text of the meadowland preservation covenant is noted in Town Exhibit Y, which is a photocopy of the deed recorded at Book 71, Page 468-469 of the Waitsfield Land Records. The covenant specifically prohibits the construction of any structures as well as "any other use . . . which is inconsistent with its maintenance as meadowland, cropland or grazing land." Interestingly, the deed does not contain a specific prohibition against further subdivision.

Applicants' boundary plan also satisfies the provisions of Regulations Art. II, § 2.0(c) for a sketch plan. See Attach. 2 to Appellant-Applicants' Mot. for Summ. J., at 9; Town's Ex. AA.

Appellant-Applicants' submissions do not, however, satisfy the requirements for a preliminary plan, Regulations, Art. III, § 1.0, because it lacks a description of the applicable zoning regulations, has no date and compass orientation, and does not depict any of the features required by Article III, § 1 including water supply, sewage disposal, utility rights of way, and contours of the property at issue. Thus, because Appellant-Applicants have not met the Regulation's requirements for a Preliminary and Final Subdivision Plan, we cannot approve Appellant-Applicants' subdivision in this proceeding. However, because we sit as the Planning Commission in this de novo appeal, we can address whether Appellant-Applicants' application can be properly considered in the discussion phase of subdivision review pursuant to Regulations Art. II, § 1.

Appellant-Applicants' subdivision of Lot 4 meets the initial requirements of the Town's Zoning Bylaws (Bylaws) for the creation of a parcel in the Agricultural-Residential District. Bylaws Table 2.7(D) establishes the applicable dimensional standards in this zoning district. Both subdivided parcels satisfy the minimum lot size and road frontage requirements for this District. At this point, Appellant-Applicants' submissions are insufficient for the Court to determine whether the setback and building height constraints are satisfied. However, these requirements need not be met for Appellant-Applicants' subdivision amendment application to be approved.

It is important to note here that while some conditions of Appellant-Applicants' subdivision permit may mirror covenants in their Warranty Deed, this Court does not have jurisdiction to address, remove, or modify a covenant or deed restriction. A covenant, like the preservation of meadowland covenant in Appellant-Applicants' Warranty Deed, is a contract, entered into in connection with 1992 subdivision approval, that now has an independent existence. Any litigation regarding the alteration, limitation or voiding of the Covenant must be undertaken in Superior Court. It is beyond the jurisdiction of the Environmental Court.

Appellant-Applicants' application seeks to amend a prior subdivision approval that contains clear prohibitions against further subdivision or development and requires the preservation of the parcel's associated open agricultural lands. Caselaw precedent under Act 250, the Vermont Land Use Law, 10 V.S.A. Ch. 151, provides guidance on how to review State

permit amendment applications, but that precedent is not yet been directly applied in the context of municipal subdivision and zoning proceedings. Our Supreme Court has considered municipal permit applications in light of the Vermont Planning and Development Act's clear policy favoring the finality of decisions of appropriate municipal panels and municipal officers. 24 V.S.A. § 4472(d). The Supreme Court has noted that there are "strong policy interests in finality." In re Hignite, 2003 VT 111, ¶ 8. The Court has also noted that "Section 4472 demonstrates an unmistakable intent to limit zoning disputes to a well-defined procedure and to provide finality at the end of the proceedings." City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 590 (2000) (mem.). Therefore, while neither the Bylaws, Subdivision Regulations, nor the Vermont Planning and Development Act expressly prohibit applications to amend final subdivision permits, this Court must presume that the enacted, unappealed subdivision permit conditions that are the target of a subsequent amendment application are considered final and cannot be challenged, directly or indirectly, in the subsequent proceedings under the explicit and interpreted directive of 24 V.S.A. § 4472(d).

Giving due regard to the clear policy favoring the finality of municipal panel decisions, this Court has yet to find precedent guiding the amendment of previously-granted municipal subdivision permits. Notwithstanding the lack of binding precedent in this context, the framework established by the Vermont Supreme Court in In re Stowe Club Highlands, 166 Vt. 33 (1996); In re Nehemiah Assoc., 166 Vt. 593 (1996) (Nehemiah I); and In re Nehemiah Assoc., 168 Vt. 288 (1998) (Nehemiah II), for amending Act 250 land use permits is particularly helpful in analyzing whether to allow the further consideration of Appellants' subdivision amendment application.

The central question in deciding whether to amend original permit conditions, like the conditions on Appellant-Applicants' subdivision, is "under what circumstances those permit conditions may be modified." Stowe Club Highlands, 166 Vt. at 37. If the circumstances underlying the initial permit have changed, the "existing permit conditions may no longer be a cost-effective or efficient method to minimize the development or subdivision's impact." Nehemiah II, 168 Vt. at 294. Precedent from the Act 250 context therefore guides this Court to consider the competing values of flexibility and finality in the permit process. Stowe Club Highlands, 166 Vt. at 38.

Though unappealed zoning permits are final, the permit process should incorporate enough flexibility to handle changes in circumstance.  Our Supreme Court provided an outline of the circumstances, in an Act 250 context, where permit amendments could be justified: "(a) changes in factual or regulatory circumstances beyond the control of a permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology."  Nehemiah II, 168 Vt. at 294 (citing Stowe Club Highlands, 166 Vt. at 38).  Moreover, even where these changes are significant enough to warrant a permit amendment, it may not be justified where "the change was reasonably foreseeable at the time of the permit application."  Nehemiah II, 168 Vt. at 294.

While flexibility in the permit process may be warranted, the present case does not present a change in circumstances significant enough to justify the amendment of the 1992 subdivision permit.

The critical regulatory and factual circumstances surrounding Appellant-Applicants' parcel and their 1992 subdivision permit have remained unchanged.  Appellant-Applicants advance two arguments regarding changes affecting their property, but neither justifies amending the original subdivision permit.  First, Appellant-Applicants argue that the subdivision permit's original applicants, Norm Neill, Donald Neill, and Dorothy Lawliss, have consented to the removal of the permit conditions at issue here.  Second, they asserted at the Planning Commission hearings that "times have changed."[3]  Notably, there has been no change in the relevant subdivision regulations, nor has there been any further development of the other parcels created in the original 1992 subdivision.[4]

Furthermore, any of the now-proposed changes in the composition of the Neill Farm subdivision appear to have been foreseen and do not justify amending the 1992 subdivision permit.  On the contrary, when the Neill Farm subdivision was first proposed, it was entirely foreseeable that a future landowner might attempt to further subdivide Lot 4.  This perceived pressure for further subdivision of valued open land was one reason given for the condition limiting further subdivision of Lot 4.  In the Planning Commission's original consideration of the Neill Farm subdivision, Planning Commission members expressed their concern that Appellant-

[3]  This argument was not advanced in Appellant-Applicants' memoranda filed with this Court, but was presented in the prior Planning Commission proceedings.
[4]  Lots 1 and 2 from the 1992 subdivision have restrictions similar to Lot 4.  Lot 3 from the 1992 subdivision contains the original farmhouse from the Neill Farm and the large tract of remaining land.  It also is subject to similar restrictions, although there is no explicit prohibition against further subdivision.

Applicants' proposal did not meet the goals for the preservation of open land and existing features expressed in both the Regulations and Town Plan. In response, the then applicant, Norm Neill, proposed limiting the use of the southern two-thirds of Lot 4 to "agricultural use only, . . . eliminating further development on this acreage."

The Town subsequently adopted this proposal to mitigate the impacts of the development, to protect agricultural soils, and to maintain the open vista from East Warren Road, "a scenic road" near the proposed subdivision. Thus, it was entirely foreseeable that further subdivision might be proposed that would have an adverse impact on the scenic, agricultural nature of the area, thus necessitating the restriction on further subdivision.

Appellant-Applicants' argument that their proposal is consistent with the preservation of agricultural lands ignores the differences between residential development and the preservation of agricultural land. As our Supreme Court stated, "[B]uilding a single-family home . . . is not consistent with preserving the lot for agricultural uses. . . . There are significant differences between an open meadow . . . and a developed lot with a private home." Stowe Club Highlands, 166 Vt. at 35. Thus, we find that Appellant-Applicants' proposal for a single-family home is not consistent with the subdivision approval's restrictions and the requirement of Subdivision Regulations Art. IV, § 1.2 that agricultural land be preserved.

The final consideration in analyzing whether to incorporate flexibility into the municipal permit process through a permit amendment is whether there has been a change in technology necessitating or creating a benefit that would result from amending the permit. Neither party has suggested that a change in technology has occurred that would justify amending Appellant-Applicants' subdivision permit, and we have found none in the evidence presented. Thus, the final avenue for justifying a change in a permit condition is not available to the Appellant here.

There has been no significant change in circumstances since 1992 necessitating flexibility in the municipal land use permitting process. Section 4472(d) and reliance by the Planning Commission and neighboring landowners supports the finality of the Town's 1992 subdivision permit conditions. The Town relied on the conditions proposed by the original applicants, limiting further subdivision to mitigate the impact of the Neill Farm subdivision on neighboring conserved properties, including the abutting Maple Avenue Farm, a parcel that was protected in part through the use of Town funds. The Town suggests that the owner of the Maple Farm likely did not appeal the Planning Commission's original approval because of the subdivision

conditions, and we believe this suggestion has merit. The evidence not only points to this neighbor's strong disagreement with the 1992 subdivision proposal, but also his belief that the development did not conform with the Town Plan or the conservation conditions placed on his abutting property.

The pending subdivision application initially meets the dimensional requirements for a subdivision in the Town's Agricultural-Residential District. However, the strong policy favoring the finality of municipal land use permits, embodied by 24 V.S.A. § 4472(d), together with the guidance from the balancing test used to review the amendment of land use permits in the Act 250 context (which we conclude is appropriate to follow here), and the express restrictions in the 1992 Neill Farm subdivision permit, lead us to conclude that allowing Appellant-Applicants to amend the Neill Farm subdivision would not be appropriate. As a result, we conclude that Appellant-Applicants should not be allowed to further subdivide Lot 4, and must abide by the conditions of their 1992 subdivision permit.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant-Applicants' motion for summary judgment is **DENIED** as to all pending questions. In accordance with the authority provided by V.R.C.P 56(e), we conclude that the material facts of this case, even when viewed in a light most favorable to Appellant-Applicants, and when applied to the applicable law and precedent, including the precedent controlling permit amendment in the Act 250 context, leads us to **GRANT** summary judgment against the proposed subdivision amendment. We therefore specifically **AFFIRM** the denial by the Waitsfield Planning Commission of Appellant's subdivision application, thereby concluding this appeal.

Done at Berlin, Vermont, this 13th day of October, 2005.

_____
Thomas S. Durkin, Environmental Judge