STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Mountainside Properties, Inc. | } | Docket No. 117-6-05 Vtec |
| Land Use Permit Amendment | } | |
| (Appeal of Wilbanks & Flocken) | } | |

## Decision and Order on Cross-Motions for Summary Judgment

Appellants George Wilbanks and Ann Flocken appeal from the decision of the District Environmental Commission #1 granting Appellee-Applicant Mountainside Properties, Inc.'s application to amend Act 250 Land Use Permit #1R0468-16 by adding a new single-family house lot and reconfiguring two other single-family house lots within a 31.96-acre parcel southerly of East Mountain Road (formerly known as Roaring Brook East Road) near the Highridge Condominiums in the Town of Killington. Appellants are represented by Charles F. Storrow, Esq.; Appellee-Applicant is represented by C. Daniel Hershenson, Esq.

Both parties have filed cross-motions for summary judgment on two of the three issues presented by Appellants' Statement of Questions, summarized as follows:

(a).     Whether Appellee-Applicant's request to amend its Act 250 permit should be denied under Environmental Board Rule 34(E) or the so-called Stowe Club Highlands analysis; and

(b).     Whether Appellee-Applicant's application to amend its Act 250 permit should be denied on the basis of the need for finality.

## Factual Background

The following facts are undisputed unless otherwise noted:

1.     On June 30, 1989, Appellee-Applicant joined in an application for an Act 250 permit to develop a 31.96-acre parcel of land above an elevation of 2,100 feet and southerly of East Mountain Road (formerly known as Roaring Brook East Road) and the

Highridge Condominiums in the Town of Killington, then known as the Town of Sherburne. Appellee-Applicant proposed to create thirteen subdivided lots, as well as associated utilities, roads, and recreational facilities, as part of a larger, previously-approved 400-acre planned unit development. This portion of the development is known as the Mountainside subdivision. The first Act 250 land use permit application solely relating to the Mountainside subdivision was assigned the docket number of 1R0468-15.

2. On August 1, 1990, District Environmental Commission #1 (District Commission) issued Act 250 permit #1R0468-15A (the 1990 permit) for the first phase of the Mountainside subdivision, including two single-family house lots, numbered Lots 1 and 14, utilities, a project road as far as Lot 1, and a primitive well access road as far as future Lot 12A. The remainder of the lots were to be developed in the proposed second phase of the project, after Appellee-Applicant relocated the neighboring Highridge Condominiums' well, since the well protection zone would be encroached upon by the proposed Mountainside Lots 2 through 13.

3. On September 4, 1990, Appellee-Applicant recorded a "Declaration of Protective Covenants" in the Killington land records. Attach. to Appellants' Mot. for Summ. J., Ex. J. The Declaration describes Mountainside's "Common Properties" as "land [that] may be held by the Developer in its present state, or may be developed and improved and the Owners, and each of them, expressly acknowledge the benefit of such Common Properties . . . ." The "Common Properties" are also those areas depicted on "the plat entitled Subdivision of Lands of Mountainside Development, Sherburne (Rutland County), Vermont dated 6/28/89, revised through 5/17/90."

4. Shortly thereafter, on September 10, 1990, Appellee-Applicant recorded a plat entitled "Subdivision of Lands of Mountainside Development, Incorporated," dated June 28, 1989, revised 5/17/90, and 9/5/90. This recorded plat showed the layout of fourteen single-family house lots, two areas of 3.09 and 9.31 acres called "Reserved

No. 1" and "Reserved No. 2," respectively, and 6.16 acres of "Common Land," which appears to include all land under and bordering the proposed access roads and an unlabeled rectangular parcel of approximately 14,000 square feet, as measured by scale, extending to the east of a proposed cul-de-sac, in the northeasterly corner of the subdivision. Attach. to Appellants' Mot. for Summ. J., Ex. K. The plat layout also depicted all roads, an existing ski trail, utility easements and curve data; an "Area Summary" of each parcel, including the "Reserved Land" and "Common Land;" and a small, roughly square 250 square-foot area with a 50-foot-long access, leased to Continental Telephone of Vermont, Inc. in the northeasterly corner of the development. See id.

5. After the relocation of Highridge Condominiums' well, the District Commission held additional hearings on the remainder of the Mountainside subdivision. Appellee-Applicant submitted plans for fourteen single-family house lots, including the above referenced plat map with a 3,500-foot road, tennis courts, and related utilities. The District Commission approved this application on May 14, 1992, as Act 250 permit #1R0468-15 (the 1992 permit) with Findings of Fact, Conclusions of Law, and an Order to Issue Permit (Findings).

6. Two of the conditions of the 1992 permit required that:

This project shall be completed in accordance with the Findings of Fact, Conclusions of Law, and Order #1R0468-15, and in accordance with plans and exhibits stamped "Approved" and on file with the District Environmental Commission. In the event of any conflict, the terms and conditions of this permit and the facts relied upon in the Findings of Fact and Conclusions of Law shall supersede the approved plans and exhibits.

Attach. to Appellee-Applicant's Mot. for Summ. J., Ex. 2, at 2 (Condition No. 6, Act 250 Land Use Permit #1R0468-15).

All road and utility construction and site work associated with this project shall be completed in accordance with the approved plans by October 15, 1993, unless an extension of this date is approved in writing by the

Commission. Such approval may be granted without notice or public hearing.

Attach. to Appellee-Applicant's Mot. for Summ. J., Ex. 2, at 3 (Condition No. 18, Act 250 Land Use Permit #1R0468-15).

7. Appellee-Applicant submitted numerous exhibits in support of its application for the 1992 permit, including site plans depicting all fourteen building lots, ranging in size from one-half acre (Lot 11) to 1.3 acres (Lot 1), including 21.56 acres outside the housing lots. Attach. to Appellants' Mot. for Summ. J., Ex. E. Another site plan submitted in connection with the 1992 permit application proposed to locate four tennis courts, a paddle tennis court, and related shelters on an area northeasterly of housing Lot 1 near the proposed cul-de-sac. Attach. to Appellants' Mot. for Summ. J., Ex. F. In addition to the site plan showing the tennis courts and other recreational facilities, Appellee-Applicant submitted a "Site & Grading Plan" that also showed the recreational facilities to the east and northeast of the proposed cul-de-sac. Attach. to Appellants' Mot. for Summ. J., Ex. M.

8. These recreation facilities were proposed for land designated on the recorded plat layout as both "Common Land" and "Reserved No. 2." The recreation facilities were proposed to be located on the 14,000 square-foot rectangular "Common Land" extension from the proposed cul-de-sac and on "Reserved No. 2" to the south and east of the 14,000 square-foot area of common land.

9. On December 23, 1993, Appellee-Applicant submitted another application to the District Commission to amend the Mountainside subdivision by eliminating two lots, Lots 5 and 6, and by adding land to Lots 2, 3, and 4. A small portion of Lot 7 was also proposed to be added to Lot 3.

10. On January 13, 1994, the District Commission approved Appellee-Applicant's amendment application as Act 250 permit #1R0468-16 (the 1994 permit). Appellee-Applicant submitted a site plan depicting the new twelve-lot subdivision with

its permit amendment application, which did not alter the classification of the land to the east and south of Lot 1. The unlabeled rectangular area of approximately 14,000 square feet remained designated as "Common Land," and the surrounding land remained designated "Reserved No. 2." See Attach. to Appellee-Applicant's Mot. for Summ. J., Ex. 5. No drawings or plans for recreational facilities were submitted with this permit amendment application.

11. Among the standard conditions of the 1994 permit were that the project be completed in accordance with the plans submitted with the application for an amended permit; that all terms and conditions of the original permit remained in effect, except as modified; and that "all road and utility construction and site work" be completed by October 15, 1995, unless an extension is granted by the District Commission. See Attach. to Appellee-Applicant's Mot. for Summ. J., Ex. 4, at 2.

12. In January 2004, Appellants purchased Lot 1 in the Mountainside subdivision. This Lot is less than 100 feet from the 14,000 square-foot area designated as "Common Land" near the proposed cul-de-sac, and surrounded by land designated "Reserved No. 2," according to the site plans recorded with the Town. Appellants maintain that in purchasing their property they relied on their transactional attorney's representation that the land to the east of Lot 1 was reserved as common land for the construction of tennis courts and other recreation facilities. They maintain that they purchased Lot 1 because of the views afforded to the east and northeast. They assert that they would not have purchased Lot 1 if additional houses were to be constructed on the vacant land to the east and south of their property.

13. On January 26, 2005, the Town of Killington Planning Commission granted a planned unit development amendment to Appellee-Applicant for the creation of three new single-family lots in the Mountainside development.

14. On February 11, 2005, Appellee-Applicant submitted the present Act 250 permit amendment application #1R0468-17 to reconfigure two lots and to add a new lot

to the previously-approved Mountainside development. This application would reconfigure the area designated as "Reserved No. 2" by creating Lots 15, 16, and 17, easterly and southerly of Lot 1. If approved, this application would result in the construction of three single family homes to the east and south of Appellants' Lot 1 and would relocate the proposed tennis courts and recreation facilities to an area to the northwest of Lot 1, within a portion of the area designated "Reserved No. 2."

15. After public hearings on Appellee-Applicant's proposal, the District Commission reviewed the permit amendment application under Act 250 Criteria 1B, 2, 3, and 8, pursuant to 10 V.S.A. § 6086(a)(1)(B), (2), (3), (8), and issued its Findings, granting the requested permit amendment (#1R0468-17) on June 15, 2005.

16. Appellants timely filed their Notice of Appeal with this Court of the Permit and Findings issued by the District Commission.

### Discussion

Appellants contend that Appellee-Applicant's permit amendment proposal to reconfigure two lots and to add an additional lot to the Mountainside subdivision should be denied because the land to the east and south of Lot 1 was previously described as "Common Land" to be developed with, at the most, tennis courts and other recreational facilities. Both parties dedicate significant portions of their cross-motions for summary judgment to arguments concerning the proper application of Environmental Board Rule (EBR) 34(E), which codified standards to evaluate applications to amend conditions of previously-approved Act 250 land use permits in light of the Vermont Supreme Court decision in In re Stowe Club Highlands, 166 Vt. 33 (1996). See also In re Nehemiah Assocs., Inc., 166 Vt. 593 (1996) (Nehemiah I); In re Nehemiah Assocs., Inc., 168 Vt. 288 (1998) (Nehemiah II).

Until now, the Environmental Court has not had the opportunity to consider issues related to Act 250 permit amendments in light of the Court's new jurisdiction over appeals from district commissions, pursuant to 10 V.S.A. § 8504 (2004). In these de

novo proceedings, the legislature has directed us to apply the "substantive standards" that were applicable to the tribunal appealed from and to give equal weight to prior decisions of the former Environmental Board (Board) as we would our own prior decisions. 10 V.S.A. § 8504(h), (m).

At the outset, we note that this Court has its own procedural rules, the Vermont Rules for Environmental Court Proceedings, that have been specifically promulgated by the Vermont Supreme Court. Therefore we are bound to employ the substantive standards applicable when the District Commission heard this application, while also continuing to adhere to our own procedural rules.

Pursuant to the Vermont Supreme Court's directive, the Board used its statutory authority to draft and promulgate Rule 34(E),[1[1]] a Rule that we now regard as one of the substantive standards that this Court is charged with applying in the Act 250 context.

---

[1[1]] EBR 34(E) states:

(E) Stowe Club Highlands Analysis.

(1) This rule governs applications to amend permit conditions which were included to resolve issues critical to the district commission's or the board's issuance of prior permit(s) pursuant to the criteria of 10 V.S.A. Section 6086(a). Applications to amend other permit conditions are not subject to the requirements of this section but must still satisfy the criteria of 10 V.S.A. Section 6086(a) and other applicable provisions of these rules.

(2) In reviewing an application for amendment, the district commission or the board should consider whether the permittee is merely seeking to relitigate the permit condition or to undermine its purpose and intent. It must also determine whether the need for flexibility arising from changes or policy considerations outweighs the need for finality in the permitting process.

(3) In balancing flexibility and finality, the district commission or the board should consider the following, among other relevant factors:

(a) changes in facts, law or regulations beyond the permittee's control;

(b) changes in technology, construction, or operations which drive the need for the amendment;

Appellants argue that EBR 34(E) applies to Appellee-Applicant's proposed amendment of the Mountainside subdivision because Appellee-Applicant requested an amendment of conditions requiring compliance with plans submitted in the course of the permit application process and requiring that construction be completed by a certain date. Rule 34(E) governs the amendment of "critical" Act 250 permit conditions. We conclude that EBR 34(E), by its language, is not applicable here.

Appellee-Applicant does not seek an amendment to any condition of its previous permits. Rather, Appellee-Applicant seeks to amend the development's layout and site plans, which are not specific permit conditions, despite being referenced in the Act 250 permits. The language of EBR 34(E) is clear, "This rule governs applications to amend permit conditions which were included to resolve issues critical to the district commission's or the board's issuance of prior permits pursuant to the criteria of 10 V.S.A. § 6086(a)." EBR 34(E)(1).

Appellants' reference to the terms of the previous permits that require further review by the District Commission, should the Permittee wish to deviate from the approved plans, and Appellants' characterization of these terms as critical permit conditions invoking Rule 34(E) review is unpersuasive and not supported by prior Board precedent. We have found no prior Board decision that characterizes such terms (Appellee-Applicant refers to such terms as "boilerplate") as critical, at least within the

(c) other factors including innovative or alternative design which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition;

(d) other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans;

(e) manifest error on the part of the district commission or the board in the issuance of the permit condition;

(f) the degree of reliance by the district commission, the board, or parties on prior permit conditions or material representations of the applicant in prior proceeding(s).

context of a Rule 34(E) review.  Such terms reinforce an important constant in state land use permitting—Act 250 permits allow a property owner to conduct the improvements specifically authorized by the permit, but no more than that.  When property owners wish to complete further improvements to a property already subject to an Act 250 permit, they may be allowed to do so only after submitting the proposed improvements in a permit amendment application.  If we were to determine that these necessary terms, included in all Act 250 permits, were "critical permit conditions" for purposes of Rule 34(E), there would be no distinction left to the initial analysis under that Rule of whether a permit condition were "critical."  We cannot disregard an analysis made necessary by the specific language of this Rule.  10 V.S.A. § 8504(h) directs that we apply this substantive standard.

We now turn to the Appellants' next argument as to why Appellee-Applicant's proposed permit amendment application should be denied.[2]  Appellants assert that Appellee-Applicant should be bound by the conditions of its 1994 permit, requiring "all road and utility construction and site work" to be completed by October 15, 1995, and that the construction be completed in accordance with the District Commission Findings, as well as all the exhibits approved by the District Commission.  They further argue that the Commission relied on these conditions to ensure that the Mountainside subdivision would continue to meet the applicable Act 250 criteria.

In deciding whether to allow an amendment to an Act 250 land use permit, "the central question . . . is not whether to give effect to the original permit conditions, but under what circumstances those permit conditions may be modified."  <u>Stowe Club</u>

---

[2]  Appellee-Applicant asserts that EBR 34(E) replaced the precedent of <u>Stowe Club Highlands</u>, 166 Vt. 33 (1996), and for that reason, this Court need not conduct this second analysis.  Since we have determined here that Rule 34(E) does not apply to these undisputed facts, we proceed to consider this second analysis under <u>Stowe Club Highlands</u> and leave the question of whether the Rule is a superseding one in all instances of permit amendment review to another case.  We note, however, that EBR 34(E)(1) specifically provides that permit conditions that are not deemed "critical . . . are not subject to the requirements of this section," thereby leaving some analysis to be completed that is outside the purview of Rule 34(E).

Highlands, 166 Vt. at 37.  When considering an application for a permit amendment, "the competing values of flexibility and finality in the permit process" are highly relevant.  Id. at 38.  Certain changes in circumstance justify allowing an application to amend a permit or its conditions, including "(a) changes in factual or regulatory circumstances beyond the control of the permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology."  Nehemiah II, 168 Vt. at 294.

While the original permit process should not merely be "a prologue to continued applications for permit amendments," Stowe Club Highlands, 166 Vt. at 39, we regard the initial permit here to be preliminary, at best.  Conditions in the 1990, 1992 and 1994 permits explicitly provided for modification, as long as those changes receive "written approval of the District Coordinator or the Commission."  Attach. to Appellee-Applicant's Mot. for Summ. J., Ex. 2, at 2 (Condition 7).

Appellants also argue that the 1992 permit requires the tennis courts and other recreational facilities to be placed on the land to the east and south of their property, Lot 1.  However, a review of the prior permits and referenced exhibits shows that there is no permit condition or representation by the developer that the tennis courts and other recreational facilities will be constructed in that specific location.  Appellee-Applicant submitted a pair of site plans placing the tennis courts to the east of Lot 1, but those plans were initial submissions as part of the original development proposal and have since been amended by plans submitted in conjunction with Appellee-Applicant's 1994 permit amendment.  Moreover, there is nothing in any of Appellee-Applicant's prior Act 250 permits or their corresponding Findings that describes the land to the east and

south of Lot 1 as having any significant inherent environmental or aesthetic value which would prevent development in that area.[3]

Another factor when considering the need for finality in the permit process is the reliance on permits and their conditions by abutting landowners and other parties, including successors in title. Appellants argue that in purchasing Lot 1, they were reasonable in relying on their transactional attorney's representation that it did not appear that anything was planned to be built on the land to the east and south of their property, with the possible exception of proposed tennis courts and other recreation facilities.

Reviewing the recorded site plan and Appellee-Applicant's previously-granted permits, we conclude that the reliance Appellants represent here was unreasonable. As stated above, nothing in Appellee-Applicant's prior Act 250 permits required the tennis courts and recreation facilities to be placed specifically to the east and south of Appellants' lot. The recorded site plans were also devoid of any language or representation that the tennis courts would be constructed in a specific area to the east and south of Lot 1. While there is a small 14,000 square-foot area of "Common Land" shown to the east of Lot 1, no document or site plan required that the tennis courts be placed in that specific area. Furthermore, the majority of the land surrounding Lot 1 is designated as "Reserved No. 2," a term that is not specifically referenced, relied upon, or defined in the permits or Findings. A common-sense interpretation of this site plan cannot lead to a conclusion that this portion of Appellee-Applicant's land is restricted from future development, or that a specific portion of this land will eventually be dedicated for these recreational facilities. To the contrary, when some land within a subdivision is "reserved" by the developer, the reasonable conclusion is that the

---

[3] Attach. to Appellee-Applicant's Mot. for Summ. J., Ex. 2, at 3, Findings of Fact, Conclusions of Law, and Order to Issue Permit #1R0468-15 states that a buffer is required to protect a small stream passing to the east of the proposed tennis courts.

developer envisions some future development for that land. Thus, Appellants' reliance on this specific representation[4] from their transactional attorney in purchasing their property was unreasonable, as no permit provision requires tennis courts or other recreational facilities to be built specifically on the land to the east and north of Lot 1. In fact, no permit condition prevents future development on that land.

The above considerations do not weigh heavily in favor of the finality of Appellee-Applicant's permit. However, we still must balance the need for finality against the need for flexibility in the permit process. Stowe Club Highlands, 166 Vt. at 38. As mentioned above, nothing in the permits or plans for the Mountainside subdivision demonstrate a specific need for the previously-granted permits to be interpreted as prohibiting the requested amendments. Appellee-Applicant's site plan illustrates that Appellee reserved an area of land for future development, depicted as "Reserved No. 2." Nothing restricted development in the area designated "Reserved No. 2," and no final, recorded plans placed any specific amenities or recreation facilities in that area. In fact, because that area is designated as "Reserved," we conclude that it is unreasonable for a potential purchaser or landowner in the Mountainside subdivision to conclude that Appellee-Applicant would not be allowed to propose further development for that area.

If we are to import a condition, retroactively, that would restrict future development, we could do so only if there were other indications that such importation was intended. Such indications could include a dedication of all "reserved" and "common" land as "Common Property," pursuant to the subdivision's Declaration of Protective Covenants or a conveyance of all or some fractional interest in the "common" or "reserved" property. However, in the present case, there is no evidence of such

---

[4] We note that this representation was presented to the Court, not in the form of the attorney's written opinion of counsel, but in one Appellant's third-hand representation, contained in their Affidavit filed in support of their Motion for Summary Judgment.

conveyances.[5] Also, the previously-granted Act 250 permits predicted that the Mountainside subdivision project might be amended, since the District Commission incorporated into those permits a method for Appellee-Applicant to apply for an amendment. See Attach. to Appellee-Applicant's Mot. for Summ. J., Ex. 2, at 2 (Condition 7) ("No changes shall be made in the design or use of this project without the written approval of the District Coordinator or Commission . . . ."). Therefore, little evidence supports the need for finality in the permit process. As a result, we find that the flexibility Appellee-Applicant seeks by requesting consideration of its permit amendment application outweighs the finality Appellants desire.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' cross-motion for summary judgment is **DENIED** as to both issues presented, and Appellee-Applicant's cross-motion for summary judgment is **GRANTED as to** both issues presented. A site visit and merits hearing is scheduled for December 16, 2005, to resolve the remaining issue of whether Appellee-Applicant's proposed amendments will have an undue adverse effect on the scenic or natural beauty of the area, or on aesthetic considerations, warranting denial of the amendment under Criterion 8, as directed by 10 V.S.A. § 6086(a)(8).

Done at Berlin, Vermont, this 13th day of December, 2005.

Thomas S. Durkin, Environmental Judge

---

[5] See Attach. to Appellants' Mot. for Summ. J., Ex. R, which appears to be Mountainside's Warranty Deed to Appellants' predecessor in title. This Deed is devoid of any specific conveying language, covenant or restriction that could serve as evidence that the developer represented that it intended to relinquish its right to further develop the lands it retained in this subdivision.