2007 VT 5

**In re Appeal of HILDEBRAND**

[917 A.2d 478]

No. 05-537

¶ 1.   January   16,   2007.   Joan Hildebrand, and her son James, appeal the Environmental Court's denial of their motion for summary judgment. The court ruled that the Waitsfield Planning Commission had appropriately denied the Hildebrands' application to amend the subdivision permit because they had not demonstrated a change in circumstances. We affirm.

¶ 2. A review of the history of the parcel under consideration is necessary to understand the case. In 1992, the Neill family   sought   approval   from   the Waitsfield Town Planning Commission to subdivide their 183.5 acre farm, located on both sides of East Warren Road, into four lots. Lots 1, 2, and 4 totaled approximately thirty acres, which the Neills intended to sell. The plan left the Neills with approximately 150 acres, known as

lot 3. The Waitsfield Town Plan designates the segment of East Warren Road that runs through the Neill farm as a "scenic corridor . . . characterized by panoramic views across open fields on both sides of the road." Because of the town plan, the Waitsfield Planning Commission originally raised concerns that the proposed development had the potential to disrupt an important viewshed. Concerns were also raised by an adjacent landowner whose land had conservation restrictions placed on it. In response to these concerns, the Neills proposed limiting the southern two-thirds of lot 4 to agricultural use only, prohibiting further development on this acreage. Lot 4 is approximately sixteen acres. The planning commission adopted the covenants drafted by the Neills, and by a written decision dated March 4, 1992, the planning commission approved the subdivision subject to seven specific conditions. Importantly, the written decision prohibited further subdivision of lots 1, 2, and 4, and required that the agricultural fields in lot 4 be maintained as open fields through grazing, cultivation or mowing on a yearly basis. The decision was not appealed. The Neills sold lot 4 to the Verguras in 1992 with a covenant in the deed intended to preserve the meadowland. Joan Hildebrand and her husband bought lot 4 in 1995. Their deed also contained a covenant preserving the meadowland.

¶ 3.   On   April   30,   2004,   Joan Hildebrand, through her son, submitted a subdivision application to the planning commission to further divide lot 4 into two parcels of approximately ten and approximately   six   acres.   James Hildebrand wishes to construct a single family home and install a driveway on the six acre parcel, which is currently undeveloped meadowland. The Waitsfield Subdivision   Regulations   allow   for amendment of previously issued subdivision permits, but they do not set out

standards an applicant must meet to gain approval for an amendment.

¶ 4. The planning commission expressed its opposition to modifying or eliminating the existing permit conditions absent a showing of significant changed or mitigating circumstances. In response, the Hildebrands submitted letters from members of the Neill family, original grantors and now neighboring property owners of the Hildebrands' parcel. The letters indicate that the Neills do not oppose subdivision of lot 4 to allow another single family home. The Hildebrands presented no other evidence of changed circumstances beyond the assertion that "times have changed." The commission denied the application for subdivision approval, and the Hildbrands appealed to the Environmental Court. The Town of Waitsfield entered an .appearance in the appeal.

¶ 5. The Hildebrands moved for summary judgment and submitted affidavits from the Neill family members stating, again, that they had no objection to amending the permit. Both the Hildebrands and the Town agreed that there is no clear rule regarding the standard applicable to requests to amend previously granted municipal land use permits. Both parties urged the Environmental Court to use Act 250 as a guide and to apply the standards articulated by the Environmental Board and upheld by this Court in *In re Stowe Club Highlands*, 166 Vt. 33, 687 A.2d 102 (1996), and *In re Nehemiah Assocs.*, 166 Vt. 593, 689 A.2d 424 (1996) (mem.), *reconsidered after remand*, 168 Vt. 288, 719 A.2d 34 (1998) (hereinafter *Nehemiah II*).

¶ 6. In *Stowe Club Highlands*, the original developer, Stowe Club Associates, sought and received an Act 250 permit to develop a 250 acre tract of land with a conference center, hotel, townhouses, and a 23-lot subdivision. 166 Vt. at 34, 687 A.2d at 103. As in this case, one condition in the permit required a meadow on the project tract to "be retained for agricultural uses." *Id.* In addition, the district commission had made findings, based on statements in the permit application, that the "Meadow Lot" would remain open and would be reserved for agriculture. *Id.* These findings were incorporated into the permit as a condition of approval. *Id.* The property was conveyed to a new owner, Stowe Club Highlands, and it sought to amend the original permit to allow the construction of a single-family home on the meadow lot. *Id.* Both the district commission and the Environmental Board concluded that the proposed development violated the original permit governing the project, and denied the permit modification. *Id.*

¶ 7. On appeal, this Court stated, "[t]he central question ... is not whether to give effect to the original permit conditions, but under what circumstances those permit conditions may be modified." *Id.* at 37, 687 A.2d at 105. We approved the board's decision to examine: "(a) changes in factual or regulatory circumstances beyond the control of a permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology." *Id.* at 38, 687 A.2d at 105. Our decision in *Nehemiah II* refined the permit-amendment standards articulated in *Stowe Club Highlands* and *Nehemiah I*, noting that they are intended to "assist in assessing the competing policies of flexibility and finality in the permitting process." *Nehemiah II*, 168 Vt. at 294, 719 A.2d at 37. We further explained that "[e]ven where the Board finds such a change, there are certain situations where an amendment may not be justified, for instance where the change was reasonably foreseeable at the

time of permit application. Otherwise, the initial permitting process would be merely a prologue to continued applications for permit amendments." *Id.* at 294, 719 A.2d at 38 (internal quotation marks omitted).

¶ 8. The Environmental Court applied these standards, denied the Hildebrands' motion for summary judgment and granted summary judgment in favor of the Town, thereby affirming the planning commission's denial of the subdivision amendment application. This appeal followed.

¶ 9. This Court reviews summary judgment rulings de novo, applying the same standard as the trial court. *Washington v. Pierce*, 2005 VT 125, ¶ 17, 179 Vt. 318, 895 A.2d 173. Summary judgment is appropriate when the "pleadings, [and] depositions, ... together with the affidavits, if any, ... show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). "Summary judgment when appropriate may be rendered against the moving party." *Id.*

¶ 10. The Hildebrands raise four issues on appeal. First, they argue that the permit conditions may be challenged directly in a petition to amend them, despite the language of 24 V.S.A. § 4472(d). Second, they suggest that if the original conditions cannot be attacked directly, they may still be amended. Third, they challenge the Environmental Court's use of *Stowe Club Highlands* as a means for evaluating permit amendments. Finally, they advocate more flexibility in the permit process when adjoining landowners do not object to the proposed amendments.

¶ 11. The Environmental Court began its analysis by noting the clear policy reasons favoring the finality of decisions of appropriate municipal panels and officers and acknowledging that this Court

has discerned an unmistakable intent by the Legislature "'to limit zoning disputes to a well-defined procedure and to provide finality at the end of the proceedings.'" *In re Dep't of Bldgs. & General Servs.*, 2003 VT 92, ¶ 21, 176 Vt. 41, 838 A.2d 78 (quoting *City of S. Burlington v. Dep't of Corr.*, 171 Vt. 587, 590, 762 A.2d 1229, 1231 (2000) (mem.) (citing 24 V.S.A. § 4472)). Section 4472 requires interested persons to appeal a permit condition to the Environmental Court. Failure to do so binds successors in interest. The Environmental Court held that, while neither the bylaws, subdivision regulations, nor the Vermont Planning and Development Act expressly prohibit applications to amend final subdivision permits, the enacted, unappealed subdivision permit conditions that are the subject of a subsequent amendment application are considered final and cannot be collaterally challenged under the explicit and interpreted directive of 24 V.S.A. § 4472. We agree.

¶ 12. As the Environmental Court discussed, this rule of finality is tempered by flexibility built into the system. *Nehemiah II*, 168 Vt. at 294, 719 A.2d at 37. The court held that, although the original conditions may no longer be challenged, they may be amended in appropriate circumstances. Again, we agree. The Environmental Court applied the three part test set out in *In re Stowe Club Highlands* and *In re Nehemiah Assocs.*, and it determined that the permit could not be amended. The Hildebrands focus their appeal on whether the Environmental Court erred in applying the standards developed under Act 250. We find that the court reasonably applied these standards, and we affirm.

¶ 13. Because the competing interests in this case are so similar to those in *Stowe Club Highlands*, the Environmental Court reasonably used the Act

250 standards in deciding this case. The court appropriately determined that there had been no change in critical regulatory and factual circumstances surrounding the parcel at issue and the 1992 subdivision permit. The Hildebrands do not dispute this finding.

¶ 14. With regard to the second criterion, whether any change has occurred in the construction or operation of the permittee's project that was not reasonably foreseeable at the time the permit was issued, the Hildebrands offer only the support of the neighboring landowners for the amendment. We agree with the Environmental Court that the surrounding landowners' lack of objection to the permit condition does not qualify as a change in circumstances. Further, the court noted that it was entirely foreseeable that a future landowner might attempt to further subdivide lot 4, and that this perceived pressure to further subdivide valued open land was one initial reason for the condition limiting further subdivision of lot 4.

¶ 15. The Hildebrands did not suggest that a change in technology had occurred that would justify amending the subdivision permit, and the Environmental Court found none in the evidence presented. This finding, too, is unchallenged on appeal.

¶ 16. Finally, the Hildebrands argue that when the surrounding landowners do not object to a permit amendment, the planning commission should simply allow the amendment. We disagree. Subdivision permits and amendments are the Town's primary tool for effectuating the town plan. This is certainly not the first time that a town's long-term goals for preservation of common resources have hindered the short-term gain of a small group of neighbors, nor will it be the last. The *Stowe Club Highlands* test allows sufficient flexibility to relieve landowners from permit conditions that have become unworkable while preventing the permit amendment process from becoming a piecemeal referendum on the town plan.

¶ 17. For the foregoing reasons, we hold that the Environmental Court's application of the standards developed under Act 250 to this local subdivision permit was appropriate and its conclusion denying the permit amendment is sound.

*Affirmed.*