STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

}
**In re Ashford Lane HOA A250 Application**}        Docket No. 69-5-13 Vtec
**(Appeal of Ashford Lane Homeowners)**     }
}

### Decision on Cross-Motions for Summary Judgment

This appeal arises from an application filed by Ashford Lane Homeowners (Appellants) with the District 5 Environmental Commission (the Commission) to amend Condition 21 of the 1986 Act 250 Land Use Permit #5W0847 (LUP) approving the Ashford Lane subdivision and development. To minimize impacts on deer wintering habitat mapped primarily on 4 of the subdivision's 17 lots, Condition 21 prohibits dogs in the subdivision. The Department of Fish and Wildlife (DFW) of the Agency of Natural Resources (ANR) participated in the 1986 permitting process and opposed any development on the four lots in question.

The Commission denied Appellants' application to amend the LUP, finding that Appellants had failed to show any change in facts, law, or regulations, or any other factors favoring flexibility pursuant to Act 250 Rule 34(E). Appellants appeal this decision and move for summary judgment asking this Court to find as a matter of law that the permit amendment application is not barred by Act 250 Rule 34(E). ANR, joined by the Natural Resources Board (NRB), opposes Appellants' motion for summary judgment and cross-moves for summary judgment in its favor. Appellants are represented by Paul Gillies, ANR is represented by Catherine Gjessing, and the NRB is represented by Gregory Boulbol.

### Factual Background

For the purpose of putting the pending motions into context we recite the following facts which the parties stipulate are undisputed and material to the questions of law before the Court:

1.   Appellants manage a 17 lot subdivision in Waterbury, Vermont that received Act 250 approval on February 26, 1986.

2.   Approximately 10 acres of the project tract are located within a larger, 1,900 acre mapped deer wintering range.

3.   DFW participated in the Act 250 permitting process, seeking to protect this deer habitat under Act 250 Criterion 8(A).

1

4. Initially, DFW identified nine lots that would potentially impact the deer habitat. Later, DFW narrowed this down to four lots where substantial impacts were likely.

5. The Commission made the following findings of fact on Criterion 8(A):

> Approximately 10 acres of the habitat's 1900 acres will be directly affected by this development or 0.5% of its total area. . . . Based on this evidence and cognizant of the burden of proof established in 10 VSA 6088(b), the Commission does not find that the project's intrusion into the range will constitute a significant imperilment of the habitat. Nor will the development of the 4 critical lots result in the destruction of the habitat.

Re: Neil Pendergast, No. 5W0847, Findings of Fact and Conclusions of Law and Order, at 7–8 (Vt. Dist. Envtl. Comm. 5 Feb. 25, 1986).

6. After finding that the development would not cause destruction or imperilment of the deer habitat, the Commission stated that further conditions were "necessary to prevent secondary impacts on the habitat from certain land uses at the subdivision. Accordingly, the Commission . . . strengthen[ed] the restrictions in the proposed covenants so as to prohibit the keeping of any dog as a pet, leashed or otherwise, in the 17 lot subdivision." Id. at 8.

7. Condition 21 in the LUP states in relevant part, "In order to minimize impacts on a deer wintering yard wildlife habitat which is partially located on this tract, no dogs shall be allowed within the subdivision."

8. DFW continued to oppose any development on the four critical lots even with Condition 21 in place.

9. No party appealed the permit and all current landowners in the subdivision were on notice of Condition 21 at the time they purchased their land.

10. In 2000, DFW approved "Guidelines for the Review and Mitigation of Impacts to White-Tailed Deer Winter Habitat in Vermont 1999" (the Guidelines).

11. Although the Guidelines are not formal administrative rules, their purpose is to "make recommendations to Act 250 District Environmental Commissions and other local, state, and federal regulatory decision-makers for permit conditions, mitigation agreements, land conservation instruments (e.g., easements), and, if necessary, permit denials." Guidelines at 1.

12. The Guidelines include model language for covenants in order to mitigate the impacts of residential development. Suggested language includes:

2

> Each landowner is hereby put on notice that this development is in the immediate vicinity of a deer wintering area. Domestic dog activity seriously jeopardizes this critical habitat and the existence of the deer in this area. A person who owns a dog that is not leashed, kenneled or otherwise under the owner's immediate control is subject to the penalties of 10 V.S.A. section 4748 (Dogs Pursuing Deer) and section 4514 (Possession of Flesh of Game).

Guidelines at 7.

13. DFW is not aware of any Act 250 permit, other than the one in question, where a complete prohibition on dog ownership has been imposed in order to protect deer wintering habitat.

14. In late 2012, Appellants filed an application to amend Condition 21 to allow leashed or kenneled dogs.

15. As no current employee of DFW was involved in the 1986 permitting process, DFW conducted a site visit to the property on January 4, 2013. DFW sent the results of this site visit to the District 5 District Commissioner in a memorandum dated January 29, 2013. DFW found that "the area continues to maintain the functions and values of deer wintering habitat."

16. DFW also noted in its memorandum that it found evidence of one potential dog track on the trail in the deer habitat area. This trail terminates at the neighboring Best Western motel. The parties agree that people staying at the Best Western may have used the trails to walk dogs but that dogs are currently not allowed at the Best Western.

17. The streets that serve the subdivision, including Ashford Lane, Acorn Drive, and Kennedy Drive are all class 3 highways.

## Motions for Summary Judgment

The court will grant summary judgment if a moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the court looks at each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. As noted above, the parties to this appeal have stipulated to the relevant facts as undisputed.

3

**I.      Act 250 Rule 34(E), the Stowe Club Highlands Analysis.**

The primary question presented in this appeal is whether Appellants are entitled to seek an amendment of Condition 21 of the LUP.  Determining whether an applicant is entitled to seek an amendment requires a three-step analysis, originally discussed by our Supreme Court in In re Stowe Club Highlands and later codified as Rule 34(E) of the Natural Resources Board Act 250 Rules.  166 Vt. 33, 38–40 (1996); 16-5 Vt. Code R. § 200:34(E).  First, the district commission, or this Court on appeal, must determine "whether the applicant proposes to amend a permit condition that was included to resolve an issue critical to the issuance of the permit.  This determination shall be made on a case-by-case basis."  16-5 Vt. Code R. § 200:34(E)(1).  If the condition was not included to resolve a critical issue, then the applicant is entitled to seek an amendment.

Next, if the condition was critical to the issuance of the permit, we must then "consider whether the permittee is merely seeking to relitigate the permit condition or to undermine its purpose and intent."  Id. at § 200:34(E)(2).  If the applicant is only seeking to relitigate or undermine the condition then the analysis ends and the applicant is not entitled to seek an amendment.

Finally, if the applicant is not merely seeking to relitigate or undermine the condition then we must weigh the competing goals of finality and flexibility based on an enumerated list of factors.

> In balancing flexibility against finality, the district commission shall consider the following, among other relevant factors:
>
> (a) changes in facts, law or regulations beyond the permittee's control;
> (b) changes in technology, construction, or operations which necessitate the need for the amendment;
> (c) other factors including innovative or alternative design which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition;
> (d) other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans;
> (e) manifest error on the part of the district commission, the environmental board, or the environmental court in the issuance of the permit condition; and
> (f) the degree of reliance on prior permit conditions or material representations of the applicant in prior proceeding(s) by the district commission, the environmental board, the environmental court,

4

parties, or any other person who has a particularized interest protected by 10 V.S.A. Ch. 151 that may be affected by the proposed amendment.

Id. at § 200:34(E)(4). The Court will thus determine, on a case by case basis, whether flexibility in the permitting process is warranted or whether finality is needed.

## II.     Whether the Condition 21 was critical to the issuance of the permit.

The parties agree generally that Condition 21 was included to address an issue that was critical to the Commission's analysis under Criterion 8(A). Specifically, the condition is meant to address impacts on deer wintering habitat protected by that Criterion. Although it found that the project as proposed would not destroy or imperil deer habitat, the Commission also found it necessary to impose conditions in order to prevent secondary impacts of the development on the mapped habitat. As such, Condition 21 was critical to the issuance of the permit.

## III.     Whether applicant is merely seeking to relitigate or undermine Condition 21.

The next inquiry is whether under the circumstances the applicant is seeking merely to relitigate the permit condition. ANR and the NRB argue that Appellants are simply seeking to relitigate the Condition in the hopes of obtaining a less restrictive condition without showing any change in circumstances warranting amendment. As the Environmental Board noted, however, "Act 250 permits are written on paper, not carved in stone, and the relitigation concepts embodied in EBR 34(E)(2) cannot be considered to be unconditionally ironclad, as, in some sense, *every* permit amendment application is a relitigation of an initial permit condition." Re: Dr. Anthony Lapinsky and Dr. Colleen Smith, Nos. 5L1018-4 and 5L0426-9-EB, Findings of Fact, Conclusions of Law, and Order, at 18 (Vt. Envtl. Bd. Oct. 3, 2003). We must therefore consider whether the motivation for seeking an amendment is to relitigate a condition or whether the applicant has presented some reasonable justification for the amendment application. Appellants point to an alleged change in regulatory behavior evidenced by the Guidelines and other Act 250 permit conditions as a basis for seeking the amendment. Under these circumstances, this alleged change is sufficient to convince the Court that Appellants are not merely seeking to relitigate or undermine Condition 21. We must therefore balance the competing interests of finality and flexibility considering the factors listed in Rule 34(E)(4).

5

## IV. Balancing finality and flexibility.

The first factor we consider in weighing finality and flexibility is whether there have been sufficient changes in fact, law, or regulations outside of the control of the applicant to warrant flexibility. "Even where the [Court] finds such a change, there are certain situations where an amendment may not be justified, for instance where the change was reasonably foreseeable at the time of permit application. 'Otherwise, the initial permitting process would be merely a prologue to continued applications for permit amendments.'" In re Nehemiah Assocs., Inc., 168 Vt. 288, 294 (1998) (quoting In re Stowe Club Highlands, 166 Vt. 33, 39 (1996)).

Appellants argue for flexibility based on the Guidelines which represent a change in facts, law, or regulations sufficient to allow for the amendment application to be considered. They argue that the Guidelines are meant to be used by district commissions to mitigate impacts on deer habitat and that although the Guidelines leave discretion to the district commission, ANR cannot argue that they have no bearing on the Act 250 permitting process.

ANR and the NRB argue that because the Guidelines did not go through formal notice and comment rulemaking, they are not formal administrative rules. They also argue that because the Guidelines are meant only to make recommendations on a case by case basis to district commissions, they are not a change in law. Lastly, ANR and the NRB argue that because the Guidelines are not enforceable or mandatory they cannot be grounds for seeking an amendment. As the Vermont Supreme Court noted in Stowe Club Highlands, however, we should not let "hypertechnical argument[s] obscure[] the basic concern: whether allowing the permit amendment is appropriate under the circumstances." 166 Vt. at 40. Rule 34(E)(4)(a) allows for changes in facts, law, or regulations to weigh in favor of flexibility. This language indicates the intent that the district commission or this Court consider more than just changes to particular laws or administrative rules.

The Guidelines were adopted more than a decade after the original 1986 LUP was granted with Condition 21. The Guidelines were outside of Appellants' control and were unforeseeable. While the mere existence of the Guidelines is insufficient to trigger reconsideration of an Act 250 condition related to deer habitat, we find that under the circumstances of this case, taken with Appellants' other allegations, the adoption of the Guidelines amounts to a change in circumstances warranting flexibility.

6

The passing of more than two decades between the initial condition and the amendment application and evidence that no other subdivision has been so restrictively conditioned are also relevant. In 1986, it was reasonable for Appellants to believe that the Commission's prohibition on the keeping of any dogs was the most effective and reasonable way to protect the deer wintering habitat within the subdivision. As far as the parties are aware, in the 27 years since the condition was imposed, the same prohibition has not been applied to any other subdivision. Furthermore, in those intervening years, DFW has, on its own accord, adopted the Guidelines indicating that a less restrictive condition is appropriate. ANR has presented no evidence as to how this particular subdivision is unique or why applying the Guidelines would not be equally effective in protecting this habitat. "If existing permit conditions are no longer the most useful or cost-effective way to lessen the impact of development, the permitting process should be flexible enough to respond to the changed conditions." Stowe Club Highlands, 166 Vt. at 38. If, as here, an applicant shows that over a long period of time a less restrictive condition has been exclusively imposed to address the same problem under the same or similar circumstances, and that administrative guidelines now encourage application of that less restrictive condition, they have met the burden of showing that the existing condition may not be the most useful way to lessen the impacts of the development. Under the facts and circumstances of this case, we therefore find sufficient changes in circumstances to weigh in favor of flexibility.

ANR and the NRB argue that these changes in circumstances are not the "driving force" behind the amendment application and therefore cannot support finding that flexibility is warranted. They point simply to the lapse in time between the adoption of the Guidelines and the amendment application. We cannot, however, say that the amendment application was not motivated by the changes in circumstances. Regardless of the timing, Appellants point to the less restrictive condition suggested in the Guidelines. Furthermore, both parties acknowledge that less restrictive conditions have been imposed on other projects. These changes are directly related to the permit amendment they seek. This is not a case where an applicant attempts to undermine a condition by pointing to some change in technology that is unrelated to the purpose for seeking the amendment. See Re: Town and Country Honda, No. 5W0773-2-EB, Findings of Fact, Conclusions of Law, and Order, at 17 (Vt. Envtl. Bd. Feb. 15, 2001) (rejecting argument based on changes in technology that had "essentially nothing to do with" the desired amendment).

ANR and the NRB also argue that even if there has been a sufficient change to weigh in favor of flexibility, this change cannot overcome the reliance by the Commission and ANR on the permit condition. Apart from noting that the deer habitat still exists and that DFW opposed the development on the four critical lots and continues to oppose the amendment, ANR and the NRB fail to show how DFW acted reasonably in reliance on the condition. While the Commission can be said to have "relied upon" any critical condition in the issuance of the permit, this alone cannot require finality as it would preclude *any* amendment of a critical condition. As the other considerations under Rule 34(E)(4) are not relevant we find that flexibility is warranted under the facts and circumstances of this case.

## Conclusion

Our conclusion that flexibility is warranted does not mean Appellants are necessarily entitled to amend Condition 21 to the less restrictive condition. Appellants must still show that the application, with the requested amendment to Condition 21, conforms to all relevant Act 250 criteria, specifically Criterion 8(A).

We **DENY** ANR/NRB's Motion and **GRANT** Appellant's Motion for Summary Judgment and **REMAND** this matter to the District Commission to conduct a specific review of the merits of Appellant's permit amendment application without employing the Rule 34(E) Stowe Club Highlands analysis.

This completes the current proceedings before this Court.

Done at Berlin, Vermont this 6th day of December, 2013.

_____
Thomas G. Walsh, Environmental Judge