STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 91-7-17 Vtec |

| | |
|---|---|
| Hawkins Bay Lane Minor SD | |

**Decision on the Merits**

Appellant/Applicants John Evans and Marjorie London ("Applicants") own a 10.13± acre parcel adjoining the Hawkins Bay section of Lake Champlain in Ferrisburgh, Vermont. Their lot was first created by a subdivision approved in 1992. Most recently, Applicants submitted an application to the Town of Ferrisburgh Planning Commission ("Planning Commission") to amend a condition of the previous subdivision approval. When the Planning Commission denied their request, Applicants appealed to this Court.

As the parties prepared for trial, the Court directed that they exhaust their efforts to reach a voluntary resolution, including by employing an independent mediator. When those efforts failed, the Court thanked the parties for their efforts, and scheduled the matter for trial.

Applicants were assisted in this proceeding by their attorney, Michael T. Russell, Esq. Their neighbors, Betsey and Tim Etchells, Hugh and Christine McBride, and Stuart M. MacCrellish ("Neighbors") appeared as Interested Persons and were assisted by their attorney, Alexander J. LaRosa, Esq. The Town of Ferrisburgh ("Town") was assisted by its attorney, Benjamin W. Putnam, Esq.

The Court received all relevant testimony during a one-day trial held at the Vermont Superior Court, Addison Unit, in Middlebury, Vermont. The parties advised that they did not believe that a site visit would assist the Court in understanding the issues presented, and the Court elected to not conduct a site visit. After trial, the Court afforded the parties the opportunity to file proposed findings of fact and conclusions of law. When that filing deadline passed, this matter came under advisement on March 23, 2018. Due to other commitments and work responsibilities, the Court was delayed by several months in completing its research and drafting

of this Merits Decision. The Court offers its apologies to the parties and their attorneys for that delay.

Based upon the evidence presented at trial, the Court renders the following Findings of Fact, Conclusions of Law, and Judgment Order that accompanies this Merits Decision.

**Findings of Fact**

### I. Existing Neighborhood

1. Applicants own a 10.13± parcel of land that is accessed by Hawkins Bay Lane in Ferrisburgh, Vermont. Their property is depicted as Lot 2 on a survey plat admitted into evidence at trial as Exhibit C.

2. Exhibit C also depicts several small lots whose northern borders run along the shores of Lake Champlain. These lots were created by a subdivision of many years ago. One of these lots is owned and occupied by Interested Persons Hugh and Christine McBride. Mr. McBride attended the trial and offered testimony.

3. Interested Persons Betsey and Tim Etchells own the parcel identified on Exhibit C as Lot 4, which borders Applicants' Lot 2 to the east.

4. Interested Person Stuart M. MacCrellish is the co-owner of what is identified as Lot 5 on Exhibit C. Lot 5 is the western-most lot depicted on Exhibit C.

### II. Subdivision and 1992 Approval, After Appeal

5. In 1989, the then-owner of a larger parcel that included Applicants' land initially sought authority to create a planned residential development ("PRD"). Several owners of the small lots along the shores of Lake Champlain expressed concerns about the proposed PRD.

6. Those small lot owners sought to have conditions placed upon the PRD, including that no development could occur on the PRD lands within 100 feet from the rear boundary line of the small lots. Those agreed-upon conditions were incorporated into the Planning Commission PRD approval.

7. The then owner of the larger tract chose not to proceed with the PRD development and instead chose to seek approval for a conventional 3-lot subdivision.

8. The Planning Commission approved the 3-lot subdivision, with the same lot lines and conditions agreed upon by the then applicant and the small lot owners. The applicant appealed

that determination to the state court that then had jurisdiction over municipal land use appeals: what was then known as the Addison County Superior Court.[1]

9.      As the subdivision application was considered on appeal, the parties advised the Addison Superior Court that they had reached a settlement that they wished to present to the Court for approval and adoption into a judgment order.  The parties' Settlement Stipulation was admitted into evidence at our 2018 trial as Exhibit 8.  The Addison Superior Court approved the settlement on March 8, 1992 and incorporated it into a Judgement Order.  The Judgment Order was admitted into evidence at our 2018 trial as Exhibit 9.

10.     Both the parties' 1992 Stipulation and the Court Judgment Order contained the following terms that are of import to the legal issues preserved for our review in the pending appeal:

> 1.  There shall be a "No Build Zone" on Lot 1 and Lot 2 where no buildings may be built.  The "No Build Zone" shall be the same area as the Conservation Zone (the Conservation Zone is established as 200 feet inland from the 95.5 foot [i.e.: mean high water mark] elevation on the lake) except in two areas, where the No Build Zone will be 170 feet from the 95.5 foot line on Lake Champlain: . . . (2) Lot 2, the area which lies east of the east line of the Baldwin Camp as extended southerly.  Such "No Build Zone" shall be shown on the final mylar.
>
> . . ..
>
> 13. The Hawkins Bay Homeowners Association or any of its members shall have a right to enforce the above conditions, including the right of specific performance and injunction action.
>
> . . ..
>
> Exhibits 8, at 1; Exhibit 9, at 5.

11.     The deviation from the Conservation District boundary line that the parties included in their Stipulation was a compromise that anticipated that the owner of Lot 2 may wish to build thirty feet closer to the Lake Champlain shoreline (i.e.: 170 feet from the shoreline, instead of the otherwise agreed-upon limit of the No Build Zone of 200 feet from the shoreline).

12.     At the time of the 1992 Stipulation and Judgment Order, all land within 200 feet from the shoreline was located in either the Shoreland or the Conservation Zoning Districts.  The remaining portion of Lot 2 was located in what was then known as the Rural Agricultural District.

---

[1]  In 1995, jurisdiction over appeals from all municipal land use determinations was legislatively transferred to what was then known as the Vermont Environmental Court.

13.     The limits of the agreed-upon No Build Zone on Applicants' Lot 2 are depicted on a site map that was admitted into evidence at our 2018 trial as Exhibit D; the No Build Zone limit is overwritten on Exhibit D with red ink. The limits of the Conservation District are shown on Exhibit D as 30 feet south of that portion of the No Build Zone.

14.     The Zoning By-Laws and Subdivision Regulations of the Town of Ferrisburgh that were in effect at the time of the 1992 litigation were those that had been adopted by Town vote on November 8, 1988 ("1988 By-Laws and Regulations"). A copy of the 1988 By-Laws and Regulations were admitted at our 2018 trial as Exhibit QQ.

15.     The 1988 By-Laws and Regulations provided that single-family dwellings were allowed in the Conservation District, subject to conditional use and site plan approval. 1988 By-Laws and Regulations §§ 1003(A) and (B), p. 39–40.

16.     The 1988 By-Laws and Regulations identified one- and two-family dwellings in the neighboring Rural Agricultural District as permitted uses. Id. at § 1002(B), p. 39.

17.     Both the deviation from the Conservation District boundary line and the credible testimony offered at trial convinced the Court that the then-parties' 1992 Stipulation establishing the No Build Zone was not premised solely upon the then-existing zoning regulations. Rather, the parties' negotiations addressed their concerns regarding construction near the already established camps and the shoreline.

18.     One reason addressed at trial for the camp-owners concern about development on Lot 2 within the No Build Zone is the topography of the land. The Lot 2 land, particularly within 170 feet from the shoreline, is on a plateau with the Lot 2 lands sitting higher than the shoreline camps. The camp owners are concerned that development within 170 feet of the shoreline may impact them and their properties.

19.     Since the 1988 By-Laws and Regulations went into effect, the Town's bylaws have been amended twice; the last amendment that applies to this proceeding took effect on November 2, 2010. A copy of the Zoning Bylaws for the Town of Ferrisburgh ("2010 Bylaws") was admitted at our 2018 trial as Exhibit 33.

-4-

20. The 2010 Bylaws changed the zoning districts in which Applicants' property is located. Those bylaw amendments included a change in the applicable zoning districts and the minimum setback requirements from the Lake Champlain shoreline. See 2010 Bylaws § 4.6(E)(5).

### III. Applicants' Applications and Subsequent Development Concerning Lot 2

21. Applicants acquired Lot 2 on December 13, 1997. They intended to build a home to use for recreation and their eventual retirement, although they did not intend to immediately begin construction.

22. On February 3, 1998, Applicants submitted an application for a zoning permit, authorizing the construction and use of a 4,000 square-foot single-family dwelling, "including outside porches/decks." Applicants' application letter to the Town, dated February 3, 1998, at 1, a copy of which was admitted at the 2018 trial as Exhibit 12. Exhibit 12 also contains a site map, depicting the proposed house location (including a front porch/deck), which was south of the No Build Zone, which is also depicted on the site map. Id. at 2.

23. Applicants represented that their proposed dwelling, "including outside porches/decks", would be 170 feet from the Lake Champlain shoreline and 75 feet from the Etchells' shared boundary line to the east. Id.

24. In their 1998 zoning permit application, Applicants referenced the Stipulation and Judgment Order filed with the Addison Superior Court in the 1992 matter and represented that their planned house site would be within authorized building area. Id.

25. The Town zoning officials approved Applicants' request for a zoning permit to construct and use the proposed dwelling, with a front porch closest to the Lake, as described in their 1998 application letter and site map. The 2018 trial testimony appeared to suggest that the 1998 zoning permit required construction to begin within one year. Applicants requested and received annual renewals of that zoning permit, without changes, for each of the following seven years.

26. On March 7, 2007, as Applicants were preparing to begin construction of their home, they filed a conditional use approval application with the Town of Ferrisburgh Zoning Board of Adjustment ("ZBA"). A copy of Applicants' application letter was admitted at our 2018 trial as Exhibit 14.

27.     In that 2007 application, Applicants requested that the ZBA revise the No Build Zone by reducing it to 80 feet from the Lake Champlain shoreline. Id. at 1. They also represented that they intended to site their proposed dwelling, with an attached front porch, no less than 140 feet from the shoreland. Id. at 2.

28.     The ZBA advised Applicants that it was not inclined to grant their request to revise the 1992 No Build Zone. There was some discussion during that meeting about whether the ZBA had the authority to revise the No Build Zone. Applicants thereafter withdrew their application.

29.     On August 1, 2009, Mr. Evans wrote to the ZBA Chair, requesting that the ZBA seek an opinion from the Town attorney on the legal issue of whether the ZBA had the legal authority to revise the 1992 No Build Zone. A copy of Mr. Evans's letter was admitted at our 2018 trial as Exhibit 16. The Town Administrative Officer responded by way of letter dated August 12, 2009. A copy of that letter was admitted as Exhibit 17. In that response letter, the Administrative Officer recommended that Applicants should first seek relief from the 1992 Judgment Order by way of a motion filed with the Addison Superior Court. The Administrative Officer went on to advise that the Town would not oppose their motion for relief and that, if their motion was successful, they would still need to seek ZBA approval of an amendment to their 1998 zoning permit. Id.

30.     Applicants began construction of their home in 2007. They completed their construction, absent the front porch, in 2015.

31.     Applicants chose to build their home in such a way as the finished dwelling, absent the front porch, abutted the 170-foot mark from the Lake Champlain shoreline. This construction left no room for the front porch and deviated from the location described and depicted on Applicants' 1998 permit application letter and site map.

32.     Mr. Evans testified that where he and Ms. London sited their home was a deliberate choice and that Mr. Evans believed that he could later secure permit authority to complete their front porch within the No Build Zone.

33.     Sometime in 2016, Applicants sought the consent of the members of the Hawkins Bay Homeowners Association for a revision in the 1992 No Build Zone. Only four of the eleven members of the Association agreed to the requested revision.

34.    Applicants filed a sketch plan application in December 2016 in which they requested that the Planning Commission eliminate the No Build Zone on their property.  A copy of their 2016 sketch plan application was admitted at our 2018 trial as Exhibit 19.

35.    The Planning Commission denied Applicants' sketch plan application.  No appeal was filed.

36.    Applicants then filed an application to amend the 1992 subdivision approval in which they sought approval to reduce the No Build Zone on their property.  The Planning Commission denied this application.[2]

37.    Applicants thereafter filed a timely appeal of the Planning Commission's denial with this Court.

## Discussion

The facts of this appeal are multilayered and have evolved over more than twenty-five years.  However, the legal issues presented are fairly straight-forward, as presented by the three Questions posed in Applicants' Statement of Questions.  For reasons that will become apparent below, we address Appellants' Question 3 first.  In that Question, Applicants ask:

> Whether the factors identified in In re Stowe Club Highlands and codified in Environmental Board Rule 34(E) weigh in favor of flexibility in the permitting process such that Application 17-026 should be approved.

> Applicants' Statement of Questions, filed July 19, 2017, at 1.

The application that is the subject of this appeal (Application #17-026) is for an amendment to a previously issued municipal subdivision approval, therefore, it is not specifically governed by Environmental Board Rule 34(E), which applies to state land use permits governed by Act 250.  We therefore do not consider Act 250 Rule 34(E).  However, our Supreme Court has ruled that some of the precedent first established in Act 250 appeals provides appropriate guidance when considering municipal permit appeals.  See In re Hildebrand, 2007 VT 5 ¶¶ 7–17, 181 Vt. 567 (mem.) (quoting In re Stowe Club Highlands, 166 Vt. 33 (1996)).

The central question presented in Hildebrand, Stowe Club Highlands, its progeny, and the appeal at bar is when should the important concepts of finality and repose that are essential in litigation give way to a flexibility that may be required in land use litigation, particularly when

---

[2]  A copy of the Planning Commission's June 26, 2017 notice of denial to Applicants was filed as an attachment to Applicants' Notice of Appeal, filed with this Court on July 19, 2017.

changes in applicable law, governing concepts, or technology justify modifications of permit conditions.

The application at issue in the present appeal requests that a specific condition in a prior subdivision approval be modified. That specific condition, established in a 1992 litigation as part of the parties' settlement, established a no build zone on the lot that Applicants now own; that provision restricted all development within 170 feet of the Lake Champlain shoreline that adjoins the northern boundary of Applicants' lot. Applicants request that the No Build Zone be reduced to 80 feet from the Lake Champlain shoreline. This revised No Build Zone would coincide with the new setback established by the present zoning bylaws, which were amended after the 1992 subdivision approval became final. See 2010 Bylaws § 4.6(E)(5) (establishing an 80-foot front yard minimum setback for properties in the Shoreland Zoning District ("SD-2 District")).

Our review of the 2010 Bylaws provides no guidance on the standards or criteria for amending previous subdivision approvals. Our 2005 review of the Town of Waitsfield Zoning and Subdivision Regulations in the Hildebrand appeal discovered a similar absence of guidance. In re Hildebrand, No. 228-12-04 Vtec, slip op. at 3–4 (Vt. Envtl. Ct. Oct. 13, 2005) (Durkin, J.). In fact, the Hildebrand appeal offers many similarities to the appeal now before us, particularly that both appeals concerned requests for revisions to conditions placed upon a previously approved subdivision that had since become final.

We noted in Hildebrand that "our Supreme Court has considered municipal permit [amendment] applications in light of the Vermont Planning and Development Act's clear policy favoring the finality of decisions of appropriate municipal panels." Id. at 5 (citation omitted). That statutory directive remains unchanged today. 24 V.S.A. § 4472(d). Even so, Vermont courts have recognized that changes in regulations, the surrounding circumstances, and even changes in technology may warrant deviations from the "finality" rule of general litigation. In re Hildebrand, 2007 VT 5, ¶ 7 (citing Stow Club Highlands, 166 Vt at 37-38).

While the acknowledgement of a need to, at times, allow for modification of final permit conditions was first established in the Act 250 context, our Supreme Court has affirmed the use in the municipal permit context of the Stowe Club Highlands rationale for allowing amendment to previously final permit conditions "on the reasoning that the competing interests in Act 250

and municipal zoning cases are so similar." In re Lathrop Ltd. P'ship, 2015 VT 49, ¶ 56, 199 Vt. 19 (citing Hildebrand, 2007 VT 5, ¶ 13)

The Supreme Court in Stowe Club Highlands articulated "under what circumstances th[e challenged] permit conditions may be modified." Stowe Club Highlands, 166 Vt. at 37. These circumstances are as follows:

> (a) changes in factual or regulatory circumstances beyond the control of a permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology.

Id. at 38.

In a subsequent appeal, our Supreme Court refined the permit amendment standards articulated in Stowe Club Highland by noting that the standards are intended:

> To assist in assessing the competing policies of flexibility and finality in the permitting process . . . [and that] [e]ven where the [Environmental] Board finds such a change, there are certain situations where an amendment may not be justified, for instance where the change was reasonably foreseeable at the time of permit application. Otherwise, the initial permitting process would be merely a prologue to continued applications for permit amendments.

In re Nehemiah Assocs., Inc., 168 Vt. 288, 294 (1998) (internal quotation marks omitted).

With that context in mind, we review the facts of the pending appeal.

Applicants place much weight upon the fact that since the initial subdivision approval in 1992, the Town has modified the applicable subdivision and zoning regulations, including a change in the applicable zoning districts and the front- and side-yard setback that any new development must respect.

We begin by noting that the regulatory changes have not impacted where Applicants have identified on their lot that they wish to build their single-family home. In essence, the regulatory changes Applicants cite have not changed where Applicants could move their building site: absent the No Build Zone established in the 1992 subdivision approval, the owners of Lot 2 could have lawfully sought a building permit at the location where Applicants now seek approval, under either the 1988 or 2010 amended regulations.

In 1992, the existing 1988 By-Laws and Regulations allowed a single-family dwelling to be built outside a 150-foot front-yard setback, provided the dwelling received conditional use

approval. 1988 By-Laws and Regulations §§ 1003(B) and (C). Thus, the 1992 Stipulation and Judgment Order established a more restrictive No Build Zone than was allowed under the then-existing zoning regulations. Stated differently, the contested prohibition against building on Applicants' property was not derived from the regulations in effect in 1992, since the regulations then in effect would have allowed for a dwelling to be built within 150 feet of the Lake shoreline.

Since Applicants chose to build their home, absent their desired nine-foot-wide front porch, 170 feet from the Lake shoreline, adding the front deck to their home would not have offended the regulations that existed in 1992, provided they received conditional use approval. Therefore, as a general matter, the only restriction that existed in 1992 that prohibits the addition of Applicants' front porch now is the No Build Zone that was imposed as a condition of that subdivision approval.

Applicants additionally assert that one rational for approving their pending request is that the regulations have changed the zoning district that governs their property, which includes a reduction in the front-yard setback to 80 feet. As stated above, the No Build Zone is not tied to the regulations that were in place at the time of its imposition. Because of this conclusion, we cannot discern how those zoning changes impact upon or are material to the No Build Zone condition of the 1992 approval.

Applicants assert that in 1992, the minimum lot size for the Conservation District was 25 acres and that those regulations prohibited any building within the 200-foot limitation of the Conservation District on any undersized lot. Applicants' Post-Trial Memorandum of Law, filed on March 12, 2018, at 3–4. Applicants in effect argue that since Lot 2 was then an undersized lot, no building could occur within the Conservation District limits. Id. Applicants offer no legal foundation to support of this assertion. Id.

This argument also ignores two important undisputed facts. First, as stated above, one- and two-family dwellings were permissible conditional uses under the 1988 By-Laws. 1988 By-Laws and Regulations § 1003(B).

Second, Lot 2 was created when the 1988 By-Laws and Regulations were in effect. We have not been provided with the rationale for why the Planning Commission in 1992 allowed an undersized lot to be created within the Conservation District. However, that 1992 Planning

Commission approval has now become a final decision that cannot now be collaterally attacked. 24 V.S.A. § 4472(d). To the extent that the 1992 Commission decision was in violation of the then-existing minimum lot size requirements, that decisional error, once final, must be respected. See In re Ashline, 2003 VT 30, ¶¶ 10-11, 175 Vt. 203 (rejecting an untimely challenge to a zoning decision even when decision was defective); Levy v. Town of St. Albans, 152 Vt. 139, 143 (1989) (rejecting argument that § 4472 does not apply when "the board's ruling is ultra vires.")

For all these reasons, we conclude that the No Build Zone created in 1992 is separate, distinct, and not based upon the then-existing zoning bylaws. We further conclude that the 2010 amendments to the zoning bylaws, whereby the minimum lot size and setback limitations (2 acres and 80 feet, respectively) governing Applicants' Lot 2 were reduced, do not provide a basis for amending the independently-established No Build Zone.

We are directed by statute to respect the finality of land use determinations. 24 V.S.A. § 4472(d). While the Supreme Court decision in Hildebrand is cited as the source for the authority to amend certain permit conditions, where appropriate, the Supreme Court reiterated there that "enacted, unappealed subdivision permit conditions that are the subject of a subsequent amendment application are considered final and cannot be collaterally challenged under the explicit and interpreted directive of 24 V.S.A. § 4472(d)." Hildebrand, 2007 VT 5, ¶ 11. In fact, we note that many of the amendments sought in the relevant case law were denied, and these denials were upheld on appeal. See Id., ¶ 17; Stowe Club Highlands, 166 Vt. at 40; Nehemiah, 168 Vt. 297-8. [3]

These numerous denials don't necessarily impact upon our review of the pending amendment application, but they do establish that the finality established by statute presents a significant hurdle for those applicants seeking to amend a final land use determination. [4]

---

[3] The Supreme Court first considered an appeal of the Environmental Board's denial of Nehemiah's application to amend its prior state subdivision approval, concluding that the Board had not thoroughly considered the factors of flexibility over finality announced in Stowe Club Highlands. In re Nehemiah Assocs., 166 Vt. 593 (1996) (mem.). On remand, the Environmental Board completed that analysis and denied the permit amendment application again. After Nehemiah challenged those later determinations, the Supreme Court upheld the denial of the permit amendment application. Stowe Club Highlands, 166 Vt. at 40.

[4] Applicants cite the Court to its decisions in In re Fenoff Accessory Dwelling App., Nos. 196-9-08 Vtec, 32-2-10 Vtec (Vt. Envtl. Ct. Dec. 27, 2010) (Wright, J.); In re 316 Main St., LLC, No. 65-5-11 Vtec (Vt. Super. Ct. Envtl. Div.

In the pending appeal, we conclude that Applicants have failed to show that there has been a change in the applicable regulations that justifies the proposed amendment to the No Build Zone.

Applicants reference recent subdivisions of adjoining properties and the increased protections for shorelands afforded by new state regulations as justifications for allowing Applicants to significantly reduce the No Build Zone. We disagree that these changes in regulations justify the relief that Applicants request. We further disagree that the subdivision of a different property with potentially different facts and circumstances justify the amendment requested here.

Applicants also cite to changed circumstances that they assert warrant flexibility in our review of their application to reduce the No Build Zone by a 90-foot width, including changes to the Town Plan that arguably reduce or remove prior restrictions on development. But this argument must also fail, since, as noted above, the bylaws that existed when the No Build Zone was created and imposed by the reviewing court otherwise allowed for development of a single-family dwelling within the Zone.

In sum, we do not agree that the changed regulations and circumstances present a sufficient basis for allowing the flexibility that is needed to grant Applicants' subdivision amendment request.

For all these reasons, we answer Applicants' Question 3 in the negative. As stated above, we conclude that the facts presented at trial do not provide a basis for Applicants satisfying the "flexibility over finality" standard established by our Supreme Court in the Hildebrand appeal.

We turn now to the remaining Questions that Applicants present.

In Question 1, Applicants ask "[w]hether the Ferrisburgh Planning Commission should have approved Application 17-026 for a minor subdivision of Lot 2 of the Hawkins Steady 1992 subdivision." Applicants' Statement of Questions, filed July 19, 2017, at 1.

---

Jun. 27, 2012) (Durkin, J); In re Waterfront Park, No. 138-9-14 Vtec (Vt. Super. Ct. Envtl. Div. May 8, 2015) (Walsh, J.), aff'd 2016 VT 39. The facts in those appeals convinced this Court that flexibility outweighed finality and that an application for a permit amendment should be allowed. The facts presented in the pending appeal were not sufficient for us to reach a similar conclusion.

We decline to address Applicants' Question 1, because our jurisdictional responsibility in this appeal <u>is not</u> to determine whether the appropriate municipal panel below acted properly. This is a de novo appeal, and we are therefore tasked with making our own independent determinations, based upon the evidence presented at our trial. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). In matters appealed on a de novo basis to our Court, we are directed to not consider the findings and legal determinations rendered below. See <u>Chioffi v. Winooski Zoning Bd.</u>, 151 Vt. 9, 11 (1989) ("A de novo trial is one where the case is heard as though no action whatever had been held prior thereto.") (internal quotation and citation omitted). For these reasons, we decline to address Applicants' Question 1.

Applicants' Question 2 asks "[w]hether Application 17-026 satisfies the submission requirements and review standards of the [2010 Town of] Ferrisburgh Zoning Bylaws and Subdivision Regulations." To answer this Question, we must first determine whether Application 17-026 may be reviewed under the then-existing zoning regulations. For the reasons stated above, we conclude that it cannot, because its review is barred by the finality rule of 24 V.S.A. § 4472(d).

We chose to first address Applicants' Question 3 because it required the most detailed legal analysis. Having completed our review of that Question, we can now address Question 2 more succinctly. We conclude that it would be improper to review the pending application's conformance with the current zoning regulations because Applicants have not fulfilled the <u>Hildebrand</u> standards that would afford the Court the flexibility to revisit the permit condition that Applicants wish to have changed, that has since become final and binding on the parties. We therefore also decline to address Applicants' Question 2, because to do so would violate the finality requirement of 24 V.S.A. § 4472(d).

### Conclusions of Law

For all the reasons stated above, we conclude that Applicants have failed to provide the Court with a sufficient justification that would allow us the flexibility under the <u>Hildebrand</u> precedent to consider or grant Applicants' request to change the 1992 subdivision permit condition that established the 170-foot No Build Zone on their Lot 2. We therefore **DENY** Applicants John Evans and Marjorie London's appeal and **UPHOLD** the Town of Ferrisburgh

Planning Commission June 26, 2017 denial of Applicants' amendment application, identified as Application No. 17-026.

A Judgment Order accompanies this Merits Decision. This completes our current review concerning the pending appeal.

Electronically signed on August 7, 2018 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____

Thomas S. Durkin, Superior Judge
Environmental Division