STATE OF VERMONT

SUPERIOR COURT                          ENVIRONMENTAL DIVISION
                                        Docket No. 52-4-19 Vtec

| | |
|---|---|
| Clark & Castle Final Plan Amendment | |

**Decision on the Merits**

Presently before the Court is an on-the-record review of the decision issued by the Town of Shelburne Development Review Board ("DRB"). Robert Clark and Becky Castle ("Applicants") appeal a DRB decision denying their request to amend a condition of approval from a previous Final Plan approval ("No. SUB00-7R2"). The DRB's decision denied Applicants' most recent application to remove a condition that prohibits further subdivision.

In reviewing the merits of this on-the-record appeal, the Court has taken into account the parties' briefs, the DRB's decision of March 20, 2019 denying Applicants' Final Plan Amendment application No. SUB00-7R2 to amend a condition of approval from a previously approved subdivision, and the record as a whole.

Applicants are represented by Alexander J. LaRosa, Esq. and the Town of Shelburne ("Town") is represented by Edward G. Adrian, Esq.

**Standard of Review**

In an on-the-record appeal, the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We do not take new evidence or make our own factual determinations. Instead, we review the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." See 24 V.S.A. § 1209(a)—(b).

The Court will affirm factual findings only if they are supported by substantial evidence in the record below. *See* In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 586 [hereinafter Stowe Highlands]. In examining whether there is substantial evidence

in the record, the Court does not assess the credibility of witness testimony or reweigh conflicting evidence in the record. *See* Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 132-8-03 Vtec, slip op. at 2 (Vt. Envtl. Ct. Nov. 1, 2004) (Wright, J.) (unpub. mem.). The Court simply looks to whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support for the factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (*quoting* Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

The Court reviews the DRB's legal conclusions without deference, unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7. In an on-the-record appeal such as this, this Court reviews legal determinations *de novo*. In re P&R Assoc., LLC, No. 74-6-12 Vtec, slip op. at 3–4 (Vt. Super. Ct. Envtl. Div. Feb. 1, 2013) (Walsh, J.). Our review is additionally limited to those issues raised by an appellant in their statement of questions. See V.R.E.C.P. 5(f). Therefore, in an on-the-record appeal, legal "arguments not briefed are deemed waived." *See* McAdams v. Town of Barnard, 2007 VT 61, ¶ 8, 182 Vt. 259; In re T.A., 166 Vt. 625, 626 (1997) (mem.) ("Issues not briefed are waived."); In re P&R Assoc., LLC, No. 74-6-12 Vtec at 2 (Feb. 1, 2013). With these legal standards in mind, we conduct our review of the DRB's decision within the context of the legal issues preserved for our review by Applicants' Statement of Questions.

## Background

In the interest of providing context to the present decision, the Court recounts the following facts. On December 14, 2000, the Town of Shelburne Planning Commission ("Planning Commission") approved Fairmount Properties' three-lot subdivision request and a revised Final Plan. This approved zoning permit ("No. SUB00-7") created Applicants' 74.49-acre lot ("the Property"), which is located at 4947 Spear Street in Shelburne, Vermont.[1] As approved, No. SUB00-7 includes a permit condition that prohibits further subdivision of the Property and provides that the Property shall only be developed for residential and normal accessory use and/or accepted agricultural practices, pursuant to 10 V.S.A. §§ 1021(f), 1239(f) and 6 V.S.A.

---

[1] The three-lot subdivision also created a 15-acre lot south of the Applicants' property and a 53.4-acre parcel located at the end of Governor's Lane. Each of the three lots are subject to the same permit condition that prohibits further subdivision.

§ 4810. The Planning Commission indicated during the December 14, 2000 meeting that the subdivision was intended to encourage "a single home development . . . with [potential] agricultural uses." *See* Clark & Castle Final Plat Amendment, Findings of Fact and Notice of Decision, at 2 (Town of Shelburne Dev. Review Bd. Feb. 6, 2019) [hereinafter "the 2018 DRB Findings of Fact and Notice of Decision"]. The Property is located within the Rural Zoning District, Stormwater-Impaired Watershed Overlay District, and Floodplain and Watercourse Overlap Districts.

Applicants purchased the Property in 2013, aware of the permit condition limiting further subdivision. Applicants invested in significant restoration and development of the property, such that it is currently used for agricultural purposes, pursuant to 10 V.S.A. § 6001.[2] On October 22, 2014, Applicants submitted a Final Plan application requesting permission from the DRB to amend SUB00-7R1 to allow for the subdivision of the Property into two separate parcels ("2014 Application").[3] Applicants asserted that when the Vermont Natural Resources Conservation Service's granted the Property a Prior Converted Cropland Exception in 2013 to conduct accepted agricultural practices, this constituted a change in regulatory circumstances meriting an amendment that would permit subdivision of the Property.[4] On January 21, 2015, the DRB denied Applicant's subdivision sketch plan application ("2014 Decision").[5] This decision notified Applicants of their right to appeal pursuant to 24 V.S.A.§ 4471. Applicants chose not to appeal.

---

[2] Applicants currently own and operate the property as a farm, which supports their farm-made ice cream business, Sisters of Anarchy Ice Cream.

[3] In the 2014 Application, Applicants sought to divide the property into two lots, the first containing approximately 5-acres for a "single family home lot" and the second lot containing the remaining portion of the existing property, to be used for an accepted agricultural practice.

[4] In the 2014 Application, Applicants asserted the exception made available wetland sections of the property to use for accepted agricultural practices which had been previously restricted from certain types of development. Applicants contended that operating a small agricultural operation, such as a community supported agriculture ("CSA") or "you pick" operation, exposed Applicants to increased personal liability.

[5] In the 2014 Decision, the DRB, in conducting an analysis pursuant to In re Stowe Club Highlands, concluded that (1) the Prior Converted Cropland Exception did not constitute a regulatory change in the proposed operation and (2) the increased popularity of the CSA or "you pick own" operations did not constitute a change in the proposed operation of the Applicants' project that was not reasonably foreseeable at the time the original subdivision was approved.

On December 18, 2018, Applicants again requested permission from the DRB to subdivide the property into two separate parcels ("2018 Application").[6] Applicants asserted that regulatory changes in financing and insurance due to the economic market crash in 2008 have made it "practically impossible" to finance and construct a home on a working farm, due to higher interest costs and lack of insurance coverage.[7] On March 20, 2019 the DRB denied Applicants' subdivision sketch plan application ("2018 Decision").[8] This decision is the subject of Applicants' timely appeal to this Court.

Presently, Applicants seek to subdivide their Property into two lots: the first of approximately 6-acres ("home parcel") and the second consisting of the remaining land, to be used for agricultural practices ("farm parcel"). In furtherance of this, Applicants seek to amend pre-existing subdivision permit SUB00-7R to obtain relief from a condition of approval restricting further subdivision.

### Conclusions of Law

As a general rule, this Court has recognized the clear intent of the Legislature in limiting "zoning disputes to a well-defined procedure and to provide finality at the end of the proceedings." In re Dep't of Bldgs. & General Servs., 2003 VT 92, ¶ 21, 176 Vt. 41 (*quoting* City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 590 (2000) (mem.) (*citing* 24 V.S.A. § 4472)). While there is a recognized policy interest in the finality of decisions by appropriate municipal panels, this Court has recognized that "although the original conditions may no longer be challenged, they may be amended in appropriate circumstances." In re Hildebrand, 2007 VT 5, ¶ 12, 181 Vt. 568 [hereinafter Hildebrand]; *see also* Stowe Highlands, 2009 VT 76, ¶ 7; In re Nehemiah Assocs., 166 Vt. 593 (1996) [hereinafter Nehemiah I].

---

[6] The 2018 Application sought roughly the same distribution as the 2014 Application. Namely, Applicants sought to subdivide the same portion of the Property into a 5- or 6-acre lot for single-family dwelling use and to use the remaining lands for agriculture.

[7] Applicants reference Act 143, which Vermont passed in 2018 to address the interaction between on-farm accessory businesses and municipal zoning, as one such regulatory change. H. 663, 2018 Leg. (Vt. 2018).

[8] The DRB's 2018 Decision again considered the criteria put forth in Stowe Club as a basis for denying Applicant's request in holding that the 2008 market crash did not constitute a change in factual or regulatory circumstances beyond the control of the permittee.

When determining the appropriate circumstances in the context of a municipal appeal, the Court considers "(a) changes in factual or regulatory circumstances beyond the control of a permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology."[9] Stowe Club Highlands, 166 Vt. 33, 38 (1996) [hereinafter Stowe Club]; Hildebrand, 2007 VT 5, ¶ 12–16 ("The Stowe Club Highlands test allows sufficient flexibility to relieve landowners from permit conditions that have become unworkable while preventing the permit amendment process from becoming a piecemeal referendum on the town plan."); *see also* Hawkins Bay Lane Minor SD, No. 91-7-17 Vtec, slip op. at 5–7 (Vt. Super. Ct. Envtl. Div. Aug. 7, 2018) (Durkin, J.) [hereinafter Hawkins]; In re Ledgewood Condo PUD CU Amend. Application., No. 150-7-07 Vtec, slip op. at 8–10 (Vt. Envtl. Ct. Aug. 26, 2008) (Durkin, J.). The Vermont Supreme Court clarified this permit-amendment standard in stating that "[e]ven where the Board finds such a change, there are certain situations where an amendment may not be justified, for instance where the change was reasonably foreseeable at the time of permit application." In re Nehemiah Assocs., Inc., 168 Vt. 288, 292 (1998) [hereinafter Nehemiah II].

This appeal concerns whether the three criteria identified in Stowe Club allow for the amendment of a pre-existing subdivision permit condition. The central issue in Stowe Club and its progeny is "when should the important concepts of finality and repose *that are essential in litigation* give way to a flexibility that may be required in land use litigation, particularly when changes in applicable law, governing concepts, or technology justify modifications of permit conditions." Hawkins, No. 91-7-17 Vtec at 7–8 (Aug. 7, 2018) (emphasis added). While this Court recognizes its authority to amend certain permit conditions under Stowe Club, the principle of finality established by 24 V.S.A. § 4472(d) represents a "significant hurdle" to applicants seeking

---

[9] This Court notes that while allowing for modification of final permit conditions originated in the Act 250 context, the Vermont Supreme Court has affirmed application of the Stowe Club rationale to the municipal permit amending process "on the reasoning that the competing interests in Act 250 and municipal zoning cases are so similar." In re Lathrop Ltd. P'ship, 2015 VT 49, ¶ 56, 199 Vt. 19 (*citing* Hildebrand, 2007 VT 5, ¶ 13) [hereinafter Lathrop].

to amend a final land use determination.[10]  Id. at 8.  With this context in mind, we review the facts of the pending appeal.

I.    **Whether the DRB properly applied the Stowe Club Highlands test**

In reviewing Applicants' request to amend the permit, the DRB set forth and then applied the legal principles of Stowe Club.  Here, the parties do not dispute that Stowe Club provides the proper legal analysis; they merely disagree on its proper application.  We therefore proceed with an analysis of the DRB record under the Stowe Club doctrine.

Here, the DRB clearly set forth the requirements, pursuant to Stowe Club, for when conditions from a municipal land use permit may be amended.  The DRB further recognized that the Supreme Court refined these standards in In re Nehemiah Assocs. to consider the purpose of amendment standards in balancing the competing interests of flexibility and finality.  Nehemiah II, 168 Vt. at 294.  Indeed, the DRB explicitly noted that when evaluating requests to amend a permit, the board "must assess competing values of flexibility and finality."  2018 DRB Findings of Fact and Notice of Decision at 5. The DRB then applied each factor from Stowe Club, and balanced those factors with the standards set forth in Nehemiah II.  First, the DRB considered whether there were any "[c]hanges in facts, law or regulations beyond the permittee's control." Hildebrand, 2007 VT 5, ¶ 7.

Applicants raise multiple arguments to challenge the DRB's conclusion that no regulatory or factual changes justify a change in the permit conditions.  These are addressed in more detail below.

Applicants first contend that the 2008 market crash significantly altered banking and insurance laws such that it constitutes a change beyond the control of the permittee and satisfies the Stowe Club test.  The Town asserts that the DRB properly decided, pursuant to the Stowe Club test, that unnamed financial and insurance regulations do not constitute factual or

---

[10]  There is a substantial history of case law cataloging the denial of amendments sought to final municipal decisions that were upheld on appeal.  Hawkins, No. 91-7-17 Vtec at 5–7 (Aug. 07, 2018); Hildebrand, 2007 VT 5 ¶ 16; Nehemiah I, 166 Vt. at 593.  While not dispositive, this demonstrates the significant weight attributed to finality. Indeed, the "permitting process requires some finality because, both at the time the permit issues and subsequently, the parties and other interested persons reasonably rely on the permit conditions in making [their future] decisions." Nehemiah II, 168 Vt. at 294 (1998).

regulatory circumstances meriting a determination that the factors in favor of flexibility outweigh the important reasons to adhere to finality.

The DRB reviewed the Applicant's evidence and determined that the "basis of the [A]pplicant's argument . . . does not constitute a change in factual or regulatory circumstances beyond the control of the permittee." 2018 DRB Findings of Fact and Notice of Decision at 5. In announcing this conclusion, the DRB noted that "when the applicant [sic] purchased the property [in 2013], they were aware of the conditions of approval affecting the property, and the regulatory framework pertaining to financing established years prior to the applicant's [sic] purchase of the property." Id.

In coming to this legal conclusion, the DRB also acknowledged Applicants' stated inability to obtain "traditional financing and insurance" and the "tighter insurance restrictions after the 2008 crash." Id. at 3. In its findings, the DRB signified that regulatory changes from the 2008 market crash were insufficient to qualify as a factual or regulatory change and indicated that Applicants neglected to articulate specific financial or insurance regulations that would warrant flexibility in altering the conditions of the permit.[11]

Appellant/Applicants have neither presented a change in law nor regulation to the DRB or this Court that lays an appropriate foundation for an amendment to their final municipal permit terms. The only material change here is a desire by Applicants to devise a more financially feasible mechanism by which to further develop the property.

---

[11] This Court has historically allowed for amendments in the permitting process principally in circumstances that involve an amended zoning regulation. In re Appeal of Nanak Hospitality, PUD & Site Plan, No. 65-3-05 Vtec. slip op. at (Vt. Super. Ct. Envtl. Div. Dec. 6, 2013) (Durkin, J.) (stating that "numerous changes in circumstances" including an amended ordinance which both prohibited prior uses of the property and allowed for the applicants' suggested uses, provided ample foundation for approval) [hereinafter Nanak]; see Ledgewood, No. 150-7-07 Vtec at 9 (Aug. 26, 2018) (denying a permit amendment when the DRB found that the "only change in fact was that Appellant sought an amendment to the permit for its own benefit"); Hawkins, No. 91-7-17 Vtec at 8 (Aug. 7, 2018) (concluding applicants failed to show a change in the applicable regulations that justified an amendment to a permit condition); Hildebrand, 2007 VT 5, ¶ 14 (holding that the adjoining "landowners' lack of objection to the permit condition does not qualify as a change in circumstances").

Applicants have provided no demonstration of relevant regulatory changes meriting consideration, or indeed any regulatory changes. Moreover, Applicants have recognized that the current regulations already permit the three proposed uses of the property: a single-family residence, accessory dwelling, and Farm Worker Dwelling. Appellant's Brief at 12, filed Sept. 23, 2019 (acknowledging that the proposed developments "can be built today in exactly the same spots Applicants would build them in after subdivision"); see Shelburne Zoning Bylaws, Table 1, Table of Permitted and Conditional Uses, Art. II. As such, we cannot discern how financial or insurance changes impact upon or are material to the condition restricting subdivision.

Next, we address whether the DRB properly considered Applicant's knowledge at the time of purchasing the property in the context of <u>Stowe Club</u> criterion (a). Applicants argue that the DRB erred in applying the <u>Stowe Club</u> test by considering whether an applicant knew of a permit condition and/or the prevailing regulatory conditions when the property was purchased. Applicants state that the appropriate standard considers only "whether there exist changes in circumstances since a permit condition was installed that support flexibility." Appellant's Brief at 13, filed Sept. 23, 2019. The Town states the DRB applied the <u>Stowe Club</u> test appropriately in considering Applicants' failure to "fully vet all the consequences of buying property subject to permit conditions." Appellee's Brief at 11, filed October 21, 2019. We conclude that the precedent cited above and below offers stronger support for the Town's analysis and therefore consider the DRB's application of <u>Stowe Club</u> below.

Here, it is important to first note the structural distinction of criterion (a) and (b) of the <u>Stowe Club</u> test. Applicants argue that the DRB considered Applicants' knowledge at the time of purchasing as a factor relating to criterion (b) of the <u>Stowe Club</u> test which requires "changes . . . not reasonably foreseeable *at the time the permit was issued*." <u>Stowe Club</u>, 166 Vt. at 38 (emphasis added); *see also* <u>In re Ashford Lane HOA A250 Application</u>, No. 69-5-13 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Dec. 6, 2013) (Walsh, J.). As a result, Applicants state that the DRB should have consider whether circumstances have changed since the Town issued zoning permit No. SUB-007R to Fairmount Properties in 2000 and must not consider Applicants' knowledge in 2013 when the property was purchased. *See* <u>Stowe Club</u>, 166 Vt. at 38; <u>In Re: Appeal of Nanak Hospitality, PUD & Site Plan</u>., No. 64-3-05 Vtec, slip op. at 10–11 (Vt. Envtl. Ct. Jan. 4, 2006) (allowing a purchaser with knowledge of prior conditions to amend a permit); *see also* <u>In re Ledgewood Condo PUD CU Amend. Application.</u>, No. 150-7-07 Vtec, slip op. at 10 (Vt. Envtl. Ct. Aug. 26, 2008) [hereinafter Ledgewood]. We agree that in analyzing criterion (b) the DRB should not consider the Applicant's knowledge at the time the property is purchased.[12]

---

[12] This Court has applied the <u>Stowe Club</u> test as considering circumstances from the date of the initial permit condition. <u>Nanak</u>, No. 64-3-05 Vtec at 10–11 (Jan. 4, 2006) (signifying that changes in circumstances may warrant and justify flexibility even when applicants that purchased property restricted by a side yard setback sought to amend this very requirement).

Consideration of an applicant's knowledge at the time of purchasing a property subject to permit conditions would be facially contrary to the language of <u>Stowe Club</u> criterion (b) and negates the Court's interest in allowing an

However, when analyzing criterion (a) of Stowe Club, which considers the permittee's degree of control, a permittee's knowledge is relevant. *Cf.* Ledgewood, No. 150-7-07 Vtec at 10 (Aug. 26, 2008) (concluding that an applicant could not claim changes were unforeseeable at the time they sought and obtained their last permit). Indeed, even in circumstances where the DRB finds a factual or regulatory change, a DRB may deny amendment if the "change was reasonably foreseeable at the time of permit application." Nehemiah II, 168 Vt. at 294 (*citing* Stowe Club, 166 Vt. at 38) (stating that "[o]therwise, the initial permitting process would be merely a prologue to continued applications for permit amendments").

In its conclusion, the DRB properly considered the Applicant's knowledge in determining factual or regulatory changes "beyond the control of the permittee." Stowe Club, 166 Vt. at 38 (detailing criterion (a)); 2018 DRB Findings of Fact and Notice of Decision at 5. Within conclusions 1–3, the DRB held that regulatory changes in financing did not satisfy criterion (a) and acknowledged Applicant's knowledge of the conditions of approval affecting the property in 2013 as evidencing a degree of control by the Applicant. 2018 DRB Findings of Fact and Notice of Decision at 4–5; *cf.* Nehemiah II, 168 Vt. at 296 (discussing circumstances beyond the control of an applicant as including development of land surrounding Applicant's project). Consequently, the DRB found no justification for amendment under criterion (a). We agree.

In concluding that there had not been sufficient changes under the Stowe Club test so as to provide the legal foundation to allow Appellants to now subdivide and develop the Property, the DRB relied upon the sketch plans attached to the 2018 final plan permit amendment application, the Final Plan SUB00-7 permit, the Town of Shelburne Zoning Bylaws, Vermont Subdivision Regulations, and other evidence. 2018 DRB Findings of Fact and Notice of Decision at 2–4. We therefore conclude that the DRB's conclusions are based on substantial evidence.

---

avenue for flexibility where existing permit conditions "are no longer the most useful or cost-effective way to lessen the impact of development." Stowe Club, 166 Vt. at 38; *see also* In re Ashford Lane HOA A250 Application, No. 69-5-13 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Dec. 6, 2013) (Walsh, J.). Indeed, It has not been this Court's policy to bar subsequent amendment applications under criterion (b) after a property is purchased simply to penalize purchasers from failing to "vet all the consequences of buying a property subject to permit conditions;" rather, this Court is directed to weigh the competing interests of finality and flexibility. Appellee's Brief at 11, filed Oct. 21, 2019; Nehemiah II, 168 Vt. at 291 (discussing finality and flexibility).

With respect to criterion (b) of the Stowe Club test, the DRB considered whether there were any "changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued." Hildebrand, 2007 VT 5, ¶ 7. The DRB determined that Applicants did not present any changes to construction or operation that were unforeseeable at the time the permit was issued. 2018 DRB Findings of Fact and Notice of Decision at 5. In concluding this, the DRB's findings clearly demonstrate that the "spirit" of the original permit was to authorize single-home development with accompanying agricultural use and contemplated a possibility of "multiple structures." Id. at 2. Here, while Applicant is proposing to use the property for an agricultural use with a single-home development, the Applicants are seeking to divide the property for two uses, thereby diverting from the original intent of the permit. Id. In addition, the DRB noted that minor changes such as increased costs do not fall under the term "unforeseeable." Id. at 5. A thorough review of the record reveals substantial evidence to support the DRB's denial of Applicants' request to amend the permit. Therefore, we find that the DRB lawfully relied on substantial evidence to determine that Applicants have not satisfied this criterion.

Pursuant to criterion (c) the DRB assessed "changes to technology, construction, or operations which drive the need for the amendment." Hildebrand, 2007 VT 5, ¶ 7. Applicants did not suggest that a change in technology had occurred that would justify amending the subdivision permit, and the DRB found none in the evidence presented. On appeal, Applicants do not raise any legal argument with respect to changes in technology.

In this case, we are directed by statute to respect the finality of land use determinations.[13] 24 V.S.A. § 4472(d). We do not find a sufficient basis for disturbing the CRB's determination to not allow the flexibility that is needed to grant Applicants' subdivision permit amendment request. Therefore, we **DENY** Applicants' appeal and **UPHOLD** the Town of Shelburne DRB's March 20, 2019 decision denying Applicants' subdivision permit amendment application.

II.    **Successive Application Doctrine**

---

[13] The controlling statute provides that an applicant who fails to appeal an appropriate municipal panel decision under 24 V.S.A. § 4465 "shall not thereafter contest, either directly or indirectly, the decision or act, provision, or decision of the panel in any proceeding, including any proceeding brought to enforce this chapter." 24 V.S.A. § 4472(d).

While the above analysis leads to our final resolution in this appeal, we note that the Town raises an additional legal argument, based upon the successive application doctrine. Even though the Town did not raise this issue below before the DRB, since it is a purely legal issue, we believe it important and necessary to address it here, in the interest of guidance. In the analysis below, we address whether the DRB explicitly or implicitly raised the successive application doctrine and whether this Court may properly consider the successive application doctrine as an issue intrinsic to the case.

While res judicata does not apply to administrative proceedings as an inflexible rule of law, the principles of res judicata and collateral estoppel "generally apply in zoning cases as in other areas of the law." Application of Carrier, 155 Vt. 152, 158 (1990) (*citing* Klein v. Colonial Pipeline Co., 55 Md.App. 324, 339 (1983); Kollock v. Sussex County Board of Adjustment, 526 A.2d 569, 572 (Del.Super.Ct.1987)). The successive application doctrine is a "distinct set of preclusive rules developed specifically for zoning proceedings." In re Dunkin Donuts S.P. Approval (Montpelier), 2008 VT 139, ¶ 7, 185 Vt. 583 (2008) (*citing* In re Armitage, 2006 VT 113, ¶ 4, 181 Vt. 241). This doctrine is distinct from issue preclusion under V.R.C.P. Rule 60(b) as it allows for greater flexibility.[14] In re Dunkin Donuts, 2008 VT 139, ¶ 8.

The successive application doctrine asserts that a "zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions ha[s] occurred or other considerations materially affecting the merits of the request have intervened between the first and second applications."[15] Carrier, 155 Vt. at 155 (upholding the lower court's decision as not

---

[14] This mechanism differs from claim preclusion in that claim preclusion is "intended to protect the courts and parties from the burden of relitigation." In re Dunkin Donuts, 2008 VT 139, ¶ 10 (*citing* Russell v. Atkins, 165 Vt. 176, 179 (1996)); *see* Faulkner v. Caledonia County Fair Ass'n, 2004 VT 123, ¶ 10, 178 Vt. 51 (discussing the rigidity of claim preclusion). In contrast, the doctrine of successive application is intended to be responsive to changing circumstances in Vermont communities while balancing the concerns of "erratic, unpredictable land use." Id. at ¶ 10. This rule protects from erratic land use by providing finality to zoning opinions, thereby protecting the integrity of the process. In re Dunkin Donuts, 2008 VT 139, ¶ 9; *see* Driscoll v. Gheewalla, 441 A.2d 1023, 1027 (Me. 1982); Dellinger v. Hagest, 157 Ind. App. 158, 165, 299 N.E.2d 222, 226 (1973); Silsby v. Allen's Blueberry Freezer, Inc., 501 A.2d 1290, 1295 (Me. 1985).

[15] The first element in the successive application doctrine requires a judgment, such as permit, with preclusive effect as specified in 24 V.S.A. § 4472(d). Lathrop, 2015 VT 49, ¶ 66 (outlining the steps to be taken when undergoing an analysis of the successive application doctrine). Here, the 2014 DRB Decision operates as final with respect to any charge from Applicants because Applicants failed to appeal the 2014 denial. Id. at ¶ 67.

erroneous in concluding a second site-plan application for subdivision was substantially changed on the basis of added landscaping proposals and road improvement plans); *see* In re Armitage, 2006 VT 113, ¶ 4 (stating that an applicant may reapply a previously denied application upon showing a successive application "addresses all concerns that prevented approval of the prior application"). The burden of proof to show a substantial change of conditions rests with the applicant. Carrier, 155 Vt. at 159 (*citing* Boutwell v. Town of Fair Haven, 148 Vt. 8, 11 (1987)).

Here, Applicants argue that the Town waived the successive application doctrine as the argument was not raised before the DRB and the DRB denied the Applicants' request on other grounds.[16] Appellants' Reply Brief at 2, filed Nov. 4, 2019. The Town contends the successive application doctrine applies and bars Applicant from raising the same arguments raised in the 2014 permit amendment application since there was no substantial change in the application, or in the circumstances surrounding it. Appellee's Brief at 6, filed Oct. 21, 2019. For the reasons stated below, we agree with the Town's analysis of this important land use doctrine.

In Carrier, the Supreme Court of Vermont noted that although the lower court did not specifically find changed circumstances before considering a second application, it held that "[the Supreme Court] will not require such an explicit finding if the court's findings implicitly indicate that the modified proposal is sufficiently changed to satisfy concerns that prevented approval of the prior application, and the findings are supported by credible evidence."[17] Carrier, 155 Vt. at 159; *see* In re Armitage, 2006 VT 113, ¶ 9 ("We encourage, but do not require, the trial court to make an explicit finding of changed circumstances before considering a second application, so long as the court's findings implicitly indicate that the revised proposal is sufficiently changed . . . ."). In the absence of an implicit indication, "consideration of the application is foreclosed by

---

[16] Applicants assert that as this is an on-the-record case, the standard of review does not permit the Town to raise legal arguments not presented below. Applicants' Reply Brief filed Nov. 4, 2019, at 2. We disagree, since in an on-the-record appeal such as this, this Court reviews legal determinations de novo. In re P&R Assoc., LLC, No. 74-6-12 Vtec at 3–4 (Feb. 1, 2013) (noting that legal conclusions, including due process, are considered de novo unless such conclusions are within the panel's expertise).

[17] This Court has often addressed the successive application doctrine and what changes constitute a substantial change of conditions. *See* Carrier, 155 Vt. at 159 (holding that redesigned interior road network, reconfigured lots, and updated landscaping were substantial changes); In re Woodstock Cmty. Tr. & Hous. Vermont PRD, 2012 VT 87, ¶ 12, 192 Vt. 474, holding modified by Lathrop, 2015 VT 49, ¶ 12; see Lathrop, 2015 VT 49, ¶ 68.

the successive application doctrine."[18] In re Armitage, 2006 VT 113, ¶ 10 (reversing a lower court decision because the revised application "should not have been considered absent changes that addressed all areas in which the previously denied application did not comply with regulations"). In Armitage, the Court highlighted that in undergoing a successive application analysis, which was unaddressed by the lower court, it "[did] not needlessly place procedure over substance, but rather s[ought] to uphold the important policy of encouraging applicants to be thorough in their initial applications in the interest of finality and judicial economy." Id.

Here, while the DRB did not analyze the successive application doctrine in its decision, the DRB expressly recognized the prior 2014 Application and the reasons for denial of the subsequent application.[19] In so doing, the DRB implicitly indicated changed circumstances in considering the Applicant's revised arguments for changes in factual or regulatory circumstances, pursuant to Stowe Club. The 2014 Application evidences that the designation of the Property under the Prior Converted Cropland Exception and the proliferation of community supported agriculture operations constituted a regulatory and factual change. In response, the DRB raised the concern that Applicants had not satisfied the Stowe Club test. The revised 2018 Application attempted to remedy this and asserted the 2008 market crash caused regulatory and factual changes in finance and insurance.

Since the DRB indicated a change in circumstance and the record manifests the DRB's knowledge that the 2018 Application constituted a revised proposal, this Court may consider the successive application doctrine as it was implicitly raised below. *Cf.* Id. at ¶ 5 (holding that Appellants impliedly invoked the successive application doctrine by asking whether changes were made to the application and therefore preclusion was not waived). Indeed, it has long been

---

[18] In Armitage, the Supreme Court considered whether modifications made in the applicants' second proposal were sufficient to overcome the successive application doctrine, thereby allowing the court to rehear the case. In re Armitage, 2006 VT 113, ¶ 9. The Supreme Court found the revised application did not include any changes to the proposals to address the lower court's concerns for denying the initial permit application. Id. at ¶ 9.

[19] On the record of the DRB hearing conducted on February 6, 2019, the DRB acknowledged the prior application on multiple occasions in stating that "a similar amendment in 2014 with the DRB denying such request on [two basis: (1) a prior converted cropland does not constitute a regulatory change and (2) the increased popularity of CSAs is not an unforeseeable change in the proposed operation] . . . [which] requested in the past Stowe Club Highlands Doctrine." 2018 DRB Findings of Fact and Notice of Decision at 3. The DRB went on to note that in 2014 "[t]here was a same sort of request. It was denied then." Id. at 8.

within the discretion of this Court to address questions of law, even when improperly raised for the first time, when the question is so intrinsic to the issues set forth. In re SP Land Co., LLC, 2011 VT 104, ¶ 15, 190 Vt. 418 ("Whether or not this issue was expressed for the first time in [a pretrial] motion, it was a question of law intrinsic to the Environmental Court's . . . ruling and therefore well within the court's discretion to reconsider."). Moreover, "nor does this amount to unfair surprise to applicants; Carrier has been settled law for [more than] fifteen years." In re Armitage, 2006 VT 113, at ¶ 8. Therefore, this Court may consider whether modifications made to applicants' proposal were sufficient to overcome the successive application doctrine.

In this case, this Court found it prudent and in the interest of judicial efficiency to decide this case on other grounds, namely that Applicant failed to satisfy the Stowe Club test. *See* Ring v. Windsor Cty. Mut. Fire Ins. Co., 54 Vt. 434, 436 (1880) (deciding a case on alternative grounds); Pcolar v. Casella Waste Sys., Inc., 2012 VT 58, ¶ 20, 192 Vt. 343, 353 (recognizing that trial judges are given "broad discretion to manage their dockets."). As such, this discussion serves the specific purpose of providing guidance to a DRB, in an on-the-record case, for the proper procedural application of the successive application doctrine. As an on-the-record town, where a detailed record of the proceedings is available, the Shelburne DRB is tasked with heightened formalities and obligations. *See* In re Irish Const. Application, No. 44-3-08 Vtec, slip op. at 3–6 (Vt. Envtl. Ct. Apr. 6, 2009) (Durkin, J.) (discussing the difference between on-the-record and de novo standards of review); In re Saman ROW Approval, No. 176-10-10 Vtec at 1 (Sept. 2, 2011) (explaining that this Court may only consider the record and factual determinations made below). We conclude that because Applicants failed to show a substantive difference between its pending application that the 2014 application, which the DRB denied and Applicants did not appeal that denial, review of their pending application is barred by the successive application doctrine.

## Conclusion

For all the reasons fully discussed above, we conclude that the DRB did not err in applying the Stowe Club test to the pending permit amendment application. In addition, the DRB properly concluded that Applicants failed to demonstrate changes in factual or regulatory circumstances beyond the control of the permittee, unforeseeable changes in construction or operation of the permittee's project, or changes in technology. We further conclude that review and approval of

Applicants' 2018 application is barred by the successive application doctrine. Therefore, we **AFFIRM** the DRB's denial of the pending application.

This concludes the matter before the Court. A Judgement Order accompanies this Decision.

Electronically signed on May 22, 2020 at Brattleboro, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division